Hicks v. Coleman et als.

# WILLIAM HICKS v. PERCY COLEMAN, C. E. CASTLE, AND WILLIAM RANDOLPH.

ADMISSIBILITY OF A DEED REFERRED TO IN ANOTHER DEED IN EVIDENCE. — If a deed of land which does not contain a description of the land conveyed, but in the body of it refers to another deed for such description, is properly admitted in evidence, then the deed to which it refers is entitled to be received in evidence, for the purpose of showing a description of the land conveyed, without any proof of its genuineness, or that there was any such person as the one purporting to execute it, or that he had any title to the land described therein.

COPY OF DEED IN EVIDENCE.—A duly certified copy of a deed regularly recorded is admissible in evidence, under the Act of April 29, 1857, if it be shown to the satisfaction of the Court by the party offering it that the original is not under his control.

ENTRY ON A PORTION OF A TRACT OF LAND UNDER A DEED DESCRIBING ALL.— One who enters into actual possession of a portion of a tract of land, claiming the whole, under a deed in which the entire tract is described by metes and bounds, is not limited in his possession to his actual inclosure, but acquires possession to the entire tract, if it was not in the adverse possession of any other person at the time of the entry.

SAME.—The rule in such cases is not limited to small tracts of land, such as are usually occupied and cultivated for farms.

CONVEYANCE OF LAND BY INDIANS.—A grant of land by the Mexican Government to a tribe of Indians, if of any validity, is for the benefit of the Indian community at large, and the individual members composing the tribe cannot make any valid conveyance of all or any portion of the same.

PRIOR AND SUBSEQUENT POSSESSORS UNDER COLOR OF TITLE. — One who enters upon a tract of land where there is no adverse possession, a portion of which is uninclosed, claiming the whole under a deed describing the entire tract, will prevail in an action to recover the land as against one who enters subsequently upon the uninclosed part showing color of title merely.

A RIVER AS A BOUNDARY LINE. — Where a river is named as a boundary line of a tract of land, the boundary line follows the meanderings of the stream; and where this boundary line is to run along a stream not navigable a given distance, the meanderings of the stream are to be followed until the required distance, when reduced to a straight line, is attained.

SURVEY OF LAND BOUNDED ON A STREAM.—If a deed conveys a given quantity of land, and describes it as bounded on a stream on one side, starting at a given point and running along the stream, without specifying the length of the lines, the required quantity of land is to be located by following the meanderings of the stream from the point named until, reduced to a straight line, the straight line will be of sufficient length to form one side of a square which would contain the required quantity, and then from the ends of this straight line projecting lines at right angles with the same to such distance as a line drawn from one to the other, parallel with the straight line, will include the required quantity between it and the stream.

SAME. — If the quantity of land and the length of the boundary line on such unnavigable stream is given, the meanderings of the stream are to be followed until, reduced to a straight line, the same will be of the required length, and then

lines are to be projected at its ends, at right angles with it, far enough so that a line drawn between the two, parallel with the straight line, will leave the required quantity between it and the stream.

MODIFICATION OF A JUDGMENT.—When the complaint, evidence as admitted, the verdict, and judgment are in harmony, but the judgment is erroneous by reason of a wrong construction given to the description of land in a deed in evidence, the Supreme Court cannot modify the judgment, but will refuse it and grant a new trial.

JOINT AND SEPARATE VERDICTS.—When several persons whose possessions are not joint, but separate, are joined as defendants in an action to recover land, and no demand is made at the close of the trial for separate verdicts, and no objection or exception is taken to the verdict on that ground in time to afford an opportunity to correct it, the defendants cannot afterwards object to a joint verdict and judgment.

INJURY BY JOINT VERDICT.—When no damages are claimed in an action to recover real estate, no injury can result from a joint verdict.

EXCEPTIONS TO CHARGE OF COURT.—Exceptions to the charge of a Court should point out the specific portions of the charge excepted to, and should be made at the time of the trial, before the jury retires.

APPEAL from the District Court, Seventh Judicial District, Solano County.

The following is a copy of the instrument to which reference is made in the deed from Shaddon to Hicks :

" *Heleno, Chief of Indians, to Thomas Shaddon:*

"NEW HELVETIA, 13th May, 1848.

"Before me, John Sinclair, Justice of the Peace of this District, and also before the witnesses whose signatures appear at the foot of this instrument, personally appeared Heleno, Chief of the Christian Indians called Moquelumnes, and declared that for himself, his heirs, and executors, and in the name of his tribe, their heirs, and executors, and all others who may claim through him or them, grants, bargains, and sells unto Thomas Shaddon, his heirs and assigns forever, a piece of land granted to them by his Excellency the Governor of the Department, Manuel Micheltorrena, as per title issued to them the 22d day of December, 1844, and delivered to Augustus Sutter, he being Justice of the Peace and Military Commandant of these frontiers 'at that date. Said land is part of the rancho called Rancho de los Cosumnes, and conceded as above declared,

consisting of one league (three miles) or five thousand square varas, (yards,) the boundaries of which are as follows: On the north or northwest the Cosumnes River; on the east or northeast by a line that starts from a point on the Cosumnes River called Paso Viejo, (Old Pass,) and runs in a line directly crossing the line of the river above referred to; on the south or southeast by a line that runs one league or five thousand varas parallel with the Cosumnes River; on the east or southeast by a line that runs one league or five thousand varas parallel with the line on the east or northeast.

" The said Heleno further declares that said property is entirely unincumbered by private or public claims of any nature, and in such conception now sells it to the said Thomas Shaddon at and for the sum of two hundred dollars, the receipt whereof he hereby acknowledges for himself and in the name of his tribe, freely giving up all his claim for himself and tribe, and guaranteeing to the said Shaddon that this sale shall prove certain, sure, and effectual.

" Witness whereof he hereunto sets his hand, date as before written.

" HELENO,  ⋈  CHIEF.

" Witness: {  J. A. SUTTER,
             J. BIDWELL,
             LEVI McKINSTRY,
             THOS. M. HARDY."

Appellants during the trial offered in evidence certified copies from the office of the Surveyor-General of the United States for California of the petition of J. A. Sutter to Manuel Micheltorrena, Governor of California, for a grant to the Moquelumne Indians, with the map accompanying the same, and the grant of Micheltorrena to the Indians, dated December 22d, 1844.

The testimony was rejected on the objection of respondents.

*Winans, Heydenfeldt,* and *Hartley,* for Appellants.

The deed of Heleno to Shaddon is no evidence of title, because:

1. Its execution is not proved. (*Jackson* v. *Vail*, 7 Wend. 129.)

2. It is not shown that there was such a person as Heleno.

3. It is not shown that Heleno was Chief or member of the tribe of Mokelumne Indians.

4. It is not shown that Heleno or the Mokelumne Indians had any title.

The recitals in a deed are no evidence against those who are not parties to it. (*Carver* v. *Jackson*, 4 Peters, 83 ; 1 Greenleaf's Ev. sec. 23, *et seq.* and note.)

The Court erred in rejecting the evidence offered by the defence, being copies and translations of original papers showing the plaintiff's source of title.

If on account of the erroneous rejection of this testimony, it is to be considered on appeal, then it proves clearly that Micheltorrena did not grant the land to the Mokelumne Indians; that Micheltorrena did not intend to grant them the land ; that the said tribe do not come within the terms of what is called the Micheltorrena general title.

If they are held to be within the general title, that has been decided to be void. (*United States* v. *Nye.*)

There was no authority on the part of Heleno to convey for his tribe or for himself.

Under the Mexican dominion, Indians were regarded as subjects, and no governmental organization among themselves was recognized. Tribes were held to occupy the status of families, but there was no admission of the "*imperium in imperio.*" This is clearly evinced by the policy of granting them tracts of land for cultivation in the same manner and upon the same mode of application as were required from other inhabitants. It was not by treaty, but by simple grant to the family.

Under the system prevailing in the United States, an Indian can convey no title.

The Constitution and laws establishing the relations between the United States and Indian tribes are political laws, and

went into effect here upon the cession of this territory by Mexico. (*Jackson* v. *Porter*, 1 Paine, 472.)

Heleno's deed to Shaddon was therefore no color of title, and the plaintiff has no color of title. (*Livingston* v. *Peru Iron Co.*, 9 Wend. 520; *Jackson* v. *Porter*, 1 Paine, 457; *Sunol* v. *Hepburn*, 1 Cal.)

And the plaintiff must be confined to his actual *pedis possessio*. (*Ricard* v. *Williams*, 7 Wheat. 105.)

If the title be an absolute nullity, it will not serve as the foundation of an adverse possession. (*Livingston* v. *Peru Iron Co.*, 9 Wend. 511.)

Heleno's deed being absolutely void, and not merely voidable, it cannot afford color of title. (*Sunol* v. *Hepburn*, 1 Cal. 225; *Doe* v. *Turner*, 9 Wheaton, 541; *Pray* v. *Price*, 7 Mass. 338; *Frique* v. *Hopkins*, 4 Martin N. S. 224.)

Where a contract has reference to another paper for its terms, the effect is the same as if the words of the paper referred to were inserted in the contract. (*Adams* v. *Hill*, 4 Shipley, 215; *Buckley* v. *Blackwell*, 10 Ohio, 510.)

Upon the question of the survey of the land described in the instrument called the Heleno deed, appellant's counsel cited *Shelton* v. *Maupin*, 16 Miss. 124; *Budd* v. *Brooke*, 3 Gill. 198; *Hartsfield* v. *Westbrook*, 1 Hayw. N. C. 258; *Middleton* v. *Pritchard*, 3 Scammon, 510; *State* v. *Gilmanton*, 9 N. H. 461; *Lynch* v. *Allen*, 4 Dev. and Bat. 62; *Jackson* v. *Low*, 12 Johns. 254.

*Robinson* and *Beatty*, for Respondents.

It is well settled that when an entry is made by one under color of title by deed, his possession is deemed to extend to the bounds of that deed, though his actual settlement and improvements were on a small parcel of the tract.

As the method of surveying, the meanders of a river are always reduced to a straight line. (*Littlepage* v. *Fowler*, 11 Wheat. 219; *Craig* v. *Hawkins' Heirs*, 1 Bibb, 53; *Calk & Orear* v. *Stribling*, 1 Bibb, 122; *Bante's Heirs* v. *Calhoun*, 2 A. K. Marshall, 591.)

By the Court, SAWYER, J.

This is an action to recover a portion of a tract of land situate near the Cosumnes River, in Sacramento County. The entire tract claimed by Hicks is one league. The plaintiff introduced a certified copy from the records of Sacramento County, of a deed from Thomas J. Shaddon to himself; also, evidence showing that Shaddon had been since 1848, and was at the time of the execution of said deed, in the actual occupancy of a part of the premises described in the complaint and deed, claiming the whole; that he had an inclosure of fifteen or twenty acres near the river, with a house on it, in which he lived, and a corral; that the rest was open and uninclosed; that he had cattle which roamed over the tract and adjoining country in connection with other cattle; that Shaddon, also, at the time the deed was executed, sold his cattle to Hicks; that Hicks bought for himself and his partner, one Martin, and had the deed made in his own name; that upon the execution of the deed from Shaddon, said Hicks and Martin entered upon the lands, receiving actual possession from Shaddon of that portion occupied by him; that they cut a ditch from a slough to the river, some eleven hundred yards, across the head of what was called " Shaddon's Pocket"— thus inclosing between the slough, river and ditch about a thousand acres—but the location of the "Pocket" with reference to the calls of the Shaddon deed is not distinctly shown; that Martin subsequently conveyed his interest to plaintiff; that at the time plaintiff and Martin entered no one occupied any portion of Shaddon's rancho; that Hicks has continued to occupy the parts upon which he entered ever since the time of his conveyance, in 1850. There was also some testimony tending to show that there was another fence along near the road crossing the tract, and that defendant Coleman's entry was within this fence; but the evidence on this point is not very satisfactory. Coleman entered sometime about a year before the trial, which was in 1858. Castle and Randolph entered upon portions of the land embraced in the calls of the

deed, but not upon any portion of the lands within any inclosure made by Hicks or Shaddon.

. Plaintiff had judgment and defendants appeal.

The deed from Shaddon to Hicks, introduced in evidence, not including the instrument referred to for a description, is as follows :

" Know all men by these presents, that I, Thomas J. Shaddon, in consideration of five thousand dollars to me in hand paid, the receipt whereof is hereby acknowledged, bargain, sell, convey and deliver unto William Hicks, his heirs and assigns forever, all my right, title, claim and interest *in the property described in the foregoing instrument,* which is made a part hereof. And I, for myself, my heirs, etc., hereby warrant the title to said premises free from the claims of all persons claiming the same under me. Witness my hand and seal, this 30th day of September, A. D. 1850.

His<br>
" THOMAS J. ⋈ SHADDON. [L. S.]<br>
mark.

" Witness : LLOYD TEVIS."

This deed seems to have been written upon another instrument, which upon its face purports to be a conveyance from Heleno, Chief of Mokelumne Indians, to Shaddon of a league of land therein described. This instrument in the arguments of counsel has been designated as the Heleno deed, and is the paper referred to for a description in Shaddon's deed as the ' foregoing instrument." The first ten points made in the introductory brief of appellants relate to the objections presented in various forms to the introduction in evidence of this instrument, and in relation to other papers supposed to be referred to in it, and to its effect as evidence when introduced. The substance of the objections is, that there was no proof of its execution ; that the original was not produced or accounted for ; that it was not shown that there was such a person as Heleno ; or that he was Chief of the Mokelumne tribe ; or that he had any authority to convey for his tribe or himself ;

or that there was any title in him or in his tribe; or that he or his tribe had any possession, etc.   The plain answer to all this is, that the instrument was not offered as a deed at all, nor was any title claimed under it as such.   It was only introduced as a part of the deed from Shaddon to Hicks.   The deed from Shaddon to Hicks was offered and read in evidence, and this instrument having been made a part of that conveyance for the purpose of inserting a description of the land which Shaddon designed to convey to Hicks by his deed, it was, as a matter of course, necessarily read as a part of Shaddon's deed. It did not matter, therefore, whether the paper was executed or not, or whether there was or not any such person as Heleno; or if so, whether he had any title to the land.   The only use made of the Heleno deed in Shaddon's conveyance was to show what property he conveyed, and that was " the property described in the foregoing instrument."   The only office the Heleno deed performs is, to furnish a description of the land, and for that purpose it is not a matter of the slightest consequence whether it was a genuine conveyance or not.   If Shaddon's deed to Hicks was properly admitted, then the Heleno deed was properly read in evidence as a part of that instrument.

But it is also objected that the certified copy of Shaddon's deed was improperly admitted, for the reason that the original was not accounted for.   The instrument was duly acknowledged and regularly recorded.   The Act of 1857 concerning copies of certain instruments in writing, provides that duly certified copies of such deeds shall be received in evidence, " provided it be shown that the said originals are not under the control of the party offering the said copies, or are lost." (Bancroft's Practice Act, page 441, note 2 ; *Skinker* v. *Flohr*, 13 Cal. 638.)   The Judge who tried the case was satisfied from the evidence that the original was not under plaintiff's control, and the evidence in the record on this point is such that we cannot say he erred.   The deed from Shaddon to Hicks was, therefore, properly admitted in evidence.

The plaintiff relies for recovery upon prior possession, and

17

claims that he has shown such possession. He claims that Shaddon was in the actual occupancy of the land claimed, by having a portion of it inclosed, and residing thereon, claiming the whole, using it as a range for his cattle from 1848 till 1850, when he conveyed the whole tract to plaintiff by specific boundaries; that plaintiff entered upon a part under said conveyance, and occupied it by residence and exercising other acts of ownership, claiming the whole according to the boundaries described in his deed; and there being no other person in possession adversely at the time of his entry, that these acts, under the well settled rules of law, gave him possession of the entire tract. The appellants do not appear to controvert this proposition, provided the conveyance was such as to constitute color of title. But they insist that plaintiff claims title under the Heleno deed, and that the deed is void upon its face for the several reasons before mentioned; and being void upon its face the plaintiff is bound to know the fact; that knowing the invalidity of the deed his entry is not in good faith, and there is no color of title sufficient to give him the benefit of the rules of law upon which he relies. Unfortunately for the argument, we are not authorized to assume that plaintiff entered, or that he claims under the Heleno deed. He repudiates any such claim himself. He does not profess to trace his title beyond Shaddon, and we do not know that Shaddon claimed under the Heleno deed. He may, for aught the Court can know, have had a perfect title. We do not know that there ever was a deed from Heleno to Shaddon. None was introduced in evidence as a link in plaintiff's chain of title. The instrument called the Heleno deed was not offered as a deed, or as an independent piece of evidence. It was not proved by plaintiff to have been executed by anybody, and was certainly not admitted by defendants to be a genuine instrument. We know that there was a paper with certain words written upon it; that this paper contained a description of the premises suitable for the purposes of Shaddon and Hicks, and was referred to by them for a descrip-

tion instead of copying the description into the deed in evidence, and this is all we know about the document.

The deed in evidence does not pretend to recite that any conveyance was ever made to Shaddon by Heleno. It does not even call this document a deed or conveyance, but simply refers to it as "the foregoing instrument." There is no recital, properly speaking, in Shaddon's deed, unless the statement of the consideration is a recital. There is nothing by deed or recital in evidence that carries us back in the chain of title beyond the deed from Shaddon, and Shaddon's occupancy of a part of the tract conveyed claiming the whole. There is nothing in evidence, then, showing the character of the title under which Shaddon claimed, except his occupancy of the land and his assuming to own it; and occupancy alone is, as was often held by the late Supreme Court, evidence of title in fee as against a trespasser. In these respects, then, there is a material difference between this case and the case of *Sunol* v. *Hepburn,* 1 Cal. 254, *Livingston* v. *Peru Iron Co.,* 9 Wend. 511, and other cases cited by appellants.

The deed from Shaddon to Hicks is valid upon its face, and sufficient to transfer any title Shaddon had at the date of its execution. It was sufficient to pass a fee simple title. There was no adverse possession of the land in any other party at the time. The plaintiff entered into actual possession of a part under the deed, claiming title to the whole tract embraced within its calls; and he continued undisturbed in his claim till the entry of the defendants. Under these circumstances does the actual occupancy of a part draw after it the possession of the whole?

The discussions upon this subject generally relate to adverse possession with reference to questions arising under Statutes of Limitations, and under Acts relating to champerty and maintenance. But there must be a possession, or there can be no adverse possession; and such a possession as would be adverse within the champerty Acts, or Statutes of Limitations, and sufficient to serve as the foundation of a title which would ultimately deprive the real owner of the land, and transfer it

to the possessor, ought, certainly, to be sufficient to enable that possessor to maintain an action against a mere intruder on his rights.

In *Ellicott* v. *Pearl,* 10 Peters, 442, Mr. Justice Story, in declaring what acts are sufficient to constitute adverse possession, says:

" The argument, in support of the instruction as prayed assumes that there can be no possession to defeat an adverse title except in one or the other of these ways, that is, by an actual residence, or by an actual inclosure, a doctrine wholly irreconcilable with principle and authority. Nothing can be more clear than that a fence is not indispensable to constitute possession of a tract of land. The erection of a fence is nothing more than an act presumptive of an intention to assert an ownership and possession over property. But there are many other acts which are equally evincive of such intention of asserting such ownership and possession, such as entering upon land and making improvements thereon, raising a crop of corn, felling and selling the trees thereon, etc., under color of title. An entry into possession of a tract of land under a deed containing specific metes and bounds gives a constructive possession of the whole tract, if not in any adverse possession, although there may be no fence or inclosure around the ambit of the tract, and an actual residence only on a part of it. To constitute actual possession it is not necessary that there should be any fence or inclosure of the land. If authority were necessary for so plain a proposition it will be found in the case of *Moss* v. *Scott,* 2 Dana, 275, where the Court say: ' It is well settled that there may be a possession in fact of land not actually inclosed by the possessor.' "

And again, on page 443 : " Pearl entered into possession of the seven thousand acre tract under his deed from Edwards, and as that deed described the tract by metes and bounds, Pearl must, upon the principles already stated, be deemed to have been in possession of the whole tract, unless some part of it was, which is not shown, in the adverse possession of some other claimant. In short, his entry being under color of

title by deed, his possession is deemed to extend to the bounds of that deed, although his actual settlement and improvements were on a small parcel only of the tract. In such a case, where there is no adverse possession, the law construes the entry to be co-extensive with the grant to the party, upon the ground that it is his clear intention to assert such possession. This doctrine is well settled. It was affirmed in this Court in *Barr* v. *Grattz*, 4 Wheat. 222, 223," and numerous other authorities are cited by the learned Justice. (See also 5 Pet. 320.) In these and many other cases the questions arose between parties claiming under patents which overlapped each other, and the parties entered under a title apparently good, derived from the Government. But all the cases are not of this class. (1 Conn. 285, 609.) In *Ellicott* v. *Pearl*, Mr. Justice Story also cites, with approbation, *Thomas* v. *Harrow*, 4 Bibb, 563.

In that case " it appeared that the defendants, or those under whom they hold, had, more than twenty years before the suit brought, entered upon their respective tracts or parcels of land, and cleared and inclosed parts thereof, claiming title thereto under deeds of conveyance previously made to them according to specified boundaries; but although the person who made the conveyances claimed the land under an entry, it did not appear that the entry covered the land, nor did it appear that there had been any survey made or patent issued in virtue of the entry, until within less than twenty years prior to bringing the action."

In this case the question was, whether there was an adverse possession twenty years before bringing the suit? If there was an adverse possession at that time, it was by virtue of an entry upon a part of the premises under a deed with specific boundaries from a party having no title, or shadow of a title to the particular land conveyed, and claiming the whole under the conveyance.

The Court say: " On this state of the case, the question was made in the Court below, whether the possession of the defendants should be co-extensive with the boundaries of their

respective deeds, or be confined to their close or fences? That Court decided that their possession was co-extensive with the boundaries of their deeds, and so instructed the jury; and whether that decision is correct or not, is the only point presented by the record in this case." 

"We have no hesitation in saying that the Court below decided correctly. The case of *Fox* v. *Hinton*; *ante* 559, we apprehend is a decision on this point. It was held in that case that where there are two patents interfering with each other, while the possession remains vacant, an entry is made on the land within the interference, by one claiming title under the junior patent, his possession shall not be limited to his close, but be co-extensive with the interference; and in principle we can perceive no difference in this respect between the case of a possession acquired under a junior patent, and a possession obtained under a deed with definite boundaries, which was made by one having no title. In either case, the tract or parcel of land, the possession of which is intended to be taken, is equally certain; and the junior patent could not, no more than such a deed, confer a title. If even color of title was necessary, as was supposed in the argument on the part of the appellant, we could not doubt that the deed would be as efficacious as the patent for that purpose. But we cannot admit that the entry, being made under color of title, can have any effect in such a case; for to constitute an ouster, whether it be by abatement, intrusion, disseizin or deforcement, the act must be tortious; and certainly it could not be less so if done without color of title, than if it had been done under color of title."

In *Smith's Heirs* v. *Frost*, 2 Dana, 149, the Court say: "A person entering on land under a deed specifying the boundaries, is in possession to the extent of those boundaries, although the person making the conveyance to him had no title. The settler on land under a bond describing the metes and bounds acquires an *actual possession* to the extent of those bounds whether the obligor had title or not, and the subsequent entry of an adversary patentee upon another part of the land gives

no seizin to such patentee in the land so held by the settler."
(See, also, 2 J. J. Marshall, 257.)

In *The Proprietors of Kennebec Purchase* v. *Laboree*, 2
Greenleaf's Rep. 286, the Court, after citing *Higbee* v. *Rice*, 5
Mass. 344, and *Jackson* v. *Elston*, 12 John. 454, (which see,)
say : " From these two cases, then, it appears that if a man
enters upon a tract of land under a deed duly registered,
though from one having no legal title to the land, and has a
visible possession, occupancy and improvement of only a part
of it, such *occupancy and improvement*, unless controlled by
other facts, being continued thirty years is a disseizin of the
true owner of *the whole tract;* and the reason is, the *nature
and extent* of his claim are or may be known by *inspection of
the public registry*. His deed being registered there gives
notoriety to his acts and his motives respecting the land he
occupies."

In a note to this case in the last edition of Greenleaf's
Reports, the editor says: " The principle here laid down has
since continued to be the received and settled law in this
State.   The authorities seem to establish this rule, that, if the
entry and adverse possession is *under a deed* duly registered,
and duly defining the boundaries of the tract therein men-
tioned, then such entry and adverse possession, if in other
respects sufficient, *will apply to the whole tract* mentioned in
the deed, although the person should be in the actual occupa-
tion of *but a part* of the tract, and although the deed *was on
its face void,"* and cites *Noyes* v. *Dyer*, 25 Maine, 472 ; *Rob-
inson* v. *Swett*, 3 Greenl. 316 ; *Gookin* v. *Whittier*, 4 Greenl.
16; *Ross* v. *Gould*, 5 Greenl. 204; *Prescott* v. *Nevers*, 4 Mason,
326 ; *Green* v. *Litter*, 8 Cranch, 229 ; *Bailey* v. *Carlton*, 12
N. H. 9 ; *Crowell* v. *Bebee*, 10 Ver. 33; and other cases.   The
cases already cited seem to us to go to the full extent neces-
sary to decide the question of possession in favor of the plain-
tiff in the case under consideration, admitting the theory of
the appellants to be correct, that color of title is necessary to
extend the possession to the boundaries specified in the deed ;
and it is not necessary, for the purpose of this decision to hold

that a deed void upon its face would be sufficient to give color of title. The deed is from a party in open possession of a part at least, claiming the whole, where there is no adverse possession, and is valid on its face. This is sufficient, under those authorities, to constitute color. It is unnecessary to determine whether or not Shaddon would have had such color of title as would have given him possession of the entire tract had he been here as plaintiff claiming possession of the whole by virtue of the Heleno deed. It is sufficient for the plaintiff that he entered under the Shaddon deed, claiming the whole.

The appellants insist that the principles established by the cases cited apply only to adverse possession set up by parties in actual occupancy of lands as a weapon of defense, and not to cases where a party out of possession relies upon a prior possession as evidence of title to recover upon against a party in possession. We have already alluded to this point, but will recur to it again. Under the authorities cited, if Hicks should remain in possession in the manner he appears by the record to have occupied, for the period prescribed by the Statute of Limitations, he could undoubtedly maintain his possession against a party having the title in fee, in an action brought by such party to eject him. According to the authorities upon the subject he would in fact, by such continued possession and claim, become vested with the title in fee. A possession which is sufficient, if continued for the prescribed period, to work such results as to the real owner of the land, ought to be sufficient, in the meantime, to protect the possession against a mere intruder. If there is any difference in the two cases, upon principle, a less rigid rule as to what shall constitute a possession should be adopted as against a trespasser than as against the real owner of the land; and this view seems to be recognized by the authorities. In *Barley* v. *Carlton*, 12 N. H. 17, the Court refers to this distinction and says: "If the possession was not of a character to indicate ownership and to give *notice to the owners* of an adverse claim, although the *grantee might be held to be in possession according to his title in a controversy with one who should make a subse-*

*quent entry without right,* his possession ought not to be held adverse to the true owner, to the extent of his deed, merely by reason of the deed itself, even if recorded, nor by any entry under it.   There are several cases which tend to sustain this view of the principle." (Citing a number of cases.) And again on same page : " If it may be said that color of title *gives such constructive seizin and possession that the grantee could maintain trespass against any person who did not show a better right,* (that is, a title or prior possession,) there is nothing in the nature of it which can give it a character of disseizin, or possession adverse to the true owner, so as to bind him." But it is enough for the purposes of this decision that possession, as to an intruder, should be put upon the same footing as an adverse possession, which would be sufficient, if continued, to toll the right of entry of the real owner.

The principles of the cases cited by us as to what acts constitute possession was also repeatedly recognized by the late Supreme Court, and in nearly every instance in actions to recover land where the plaintiff relied upon prior possession as evidence of title.

In *Gunn* v. *Bates,* 6 Cal. 265, the defendant asked the following instruction : " The mere fact that the plaintiff or the decedent was in actual possession, by inclosing a portion of the tract described in the Mexican grant, is no evidence of possession of any land not so inclosed or marked out with clearly defined boundaries."

The Court refused it and gave the following : "If you believe from the evidence that Sheldon entered upon and took possession of the tract of land described in his grant under and by virtue of that grant ; that he was put in possession in the manner described by the first witness, (General Sutter,) and that he immediately went on to occupy and improve, and continued to occupy and improve, a part of the land, and asserted his claim and possession to the whole under his grant, and no other person was in adverse possession of any portion of the land, and that Sheldon, or his representatives, never abandoned the land, and that the premises in controversy in

18

this suit are within the boundaries described in the grant, you will find for the plaintiff." Defendants excepted, and these rulings were reviewed and sustained by the Supreme Court. Mr. Chief Justice Murray cited the rule already quoted from *Ellicott* v. *Pearl*, 10 Peters, 442; and said: "This doctrine has never within our knowledge been doubted in this Court." (Page 272.) The case turned upon this point, as the other views presented by the Chief Justice were not concurred in by the other members of the Court.

In *Rose* v. *Davis*, 11 Cal. 141, Mr. Justice Baldwin said: "The Court, at the instance of plaintiff, gave several instructions, numbered from one to five in the record, which *seem to us to be correct.*" The first instruction referred to embodied the same principle as that given in *Gunn* v. *Bates.* But the case is, perhaps, not entitled to much weight, for the reason that a decree of confirmation seems, from another instruction, to have been read in evidence. (See, also, *Baldwin v. Simpson*, 12 Cal. 560 ; *Keane* v. *Cannovan*, 21 Cal. 299.) In the last case the deed from Ramirez to Mondolet was held admissible, "as showing the extent and boundaries of the premises of which Mondolet claimed possession."

But admitting the rule to be, that the entry upon, and occupation of, a part of a tract of land, under a deed claiming the whole, gives constructive possession to the entire tract within the calls of the deed, it is still insisted by the appellant that this principle does not apply to large tracts of land like that in controversy, but that it must be limited to tracts of the customary size, such as are usually occupied as farms, partly cultivated; and some New York cases are cited which sustain this view. It would be found very difficult to apply the principle with such a limitation. Who shall say what tract of land is of the customary size, particularly in a new and sparsely settled country, where possessions are measured by leagues rather than acres, or even miles? Prior to 1850 the customary size of tracts of land held and occupied for grazing purposes—the chief occupation of the old inhabitants of California—was much larger than the tract in question. But,

admitting the limitation of the rule contended for, to exist, the tract in dispute would doubtless, at the date of Shaddon's deed, be within the rule thus limited. The tract in *Ellicott* v. *Pearl*, 10 Peters, was seven thousand acres, much larger than the tract in question. In *Gunn* v. *Bates*, 6 Cal., already cited, the defendant asked the following instruction : " Possession of a portion of a large tract under a conveyance of such larger tract will not extend to the full extent of such larger tract, when the same amounts to several Mexican square leagues. Such constructive possession is limited to tracts of land usually occupied and used for farming purposes, in the usual course of husbandry in the country. If you believe, from the evidence, that Sheldon never had the boundaries of the tract described in the grant marked out, and that the same exceeds the usual limits of a farm, then his possession is limited to the land he had actually inclosed or clearly marked out ; and in such case, if the tract in the possession of the defendants is not included within any such inclosure or marked boundaries, you will find for the defendants."

This instruction was refused and the refusal assigned as error. Mr. Chief Justice Murray's comments upon the instruction refused are equally applicable to the case under consideration. He said : " The Court properly refused the instruction asked by the defendants. The law does not require that the whole tract should be inclosed ; it is sufficient if the grant, under which the plaintiff entered, calls for distinct boundaries ; neither should the plaintiff's recovery be limited to the size of a usual farm ; there is no principle we know of which should alter the rule we have laid down ; besides, at the time of the execution of this grant the land was designed for grazing and not for agricultural purposes, and the grant was less than the usual size of concessions for such purposes."

There was no error in refusing to admit in evidence the certified copies of papers from the transcript in the case of the *United States* v. *J. A. Sutter for the Mokelumne Indians.* The papers could not have aided the defendants had they been admitted.

The defendant Coleman introduced deeds from some twenty-seven Mokelumne Indians, executed in 1856, to one Powers, purporting to convey to said Powers three leagues of land, including the lands in controversy. It is insisted that plaintiff and defendant Coleman derive such title as they have from the same source, and that they are therefore tenants in common.

We have already seen that there is no evidence in the case to show that plaintiff derives, or claims to derive, any title from the so-called Micheltorrena grant to the Mokelumne Indians, and this disposes of the whole basis of the long argument on this point.

It is admitted and insisted by the appellants that the Mokelumne Indians had no title, or if they had, that Indians have no capacity to convey; and for these reasons Heleno not only could not convey the title of his tribe, but that he could not even convey his own interest. In both these positions we think they are right, and the same objections apply with equal force to Coleman's conveyances from the twenty-seven Indians. If the Indians had any interest at all, it was of a public nature, for the benefit of the Indian community at large. It was not subject to sale to individual purchasers by any one or more, or even all of the members of the tribe. Such sales are contrary to the policy and laws both of the Governments of Mexico and the United States. To insist that any right, as tenants in common, or otherwise, could be acquired under a conveyance from any number of a recognized tribe of Indians sustaining the ordinary relation of individual Indians to their tribe, would be very much like claiming that any one or more citizens of California might convey their individual, undivided interest in the swamp and overflowed lands, or any other lands donated by the United States to the State of California for public purposes, and that the grantee would thereby acquire such a right of property therein as would constitute him a tenant in common with all other citizens of California, and enable him to defeat an action for their recovery, with this difference, however, in favor of the latter proposition—that a citizen of California can convey lands in which he has an interest as owner,

while an Indian, sustaining the relation to his tribe above referred to, has no capacity recognized by law to convey lands. Such a claim would be preposterous in the extreme.

Yet it is insisted that Coleman, by virtue of his conveyances from the twenty-seven Mokelumne Indians, is in under color of title—that plaintiff at best only entered under color of title, and that a colorable title in Coleman is sufficient to enable him to defeat a merely colorable title in plaintiff. But admitting that plaintiff only entered under color of title, and that defendant also had color, still plaintiff derived his possession and color from an entry under a deed from Shaddon, valid on its face, at a time when he was in possession of a part, claiming the whole, and when there was no adverse possession. His possession under these circumstances, being also prior in point of time, was therefore best, for prior possession is evidence of title in fee.   In the apt and accurate language of Mr. Justice Heydenfeldt, in *Norris* v. *Russell*, 5 Cal. 250, "it is objected that the defendant had color of title, although his possession was subsequent to plaintiff, and therefore it is urged his possession ought to prevail.   But it must be held in view that prior possession is evidence of title, and cannot by any system of reasoning be made to yield to mere color of title, or, in other words, to that which is not title."

Also in *Keane* v. *Cannovan*, 21 Cal. 305, Mr. Chief Justice Field used language equally applicable.   He said: "The possession of Mondolet was evidence of seizin in fee in him, and no further or higher evidence of title was required to enable the plaintiff claiming through him to recover, until the defendant had shown an anterior possession or had traced title to a paramount source.   It is immaterial, in this view, whether we consider the tax deed to Dumartheray sufficient to constitute color of title or otherwise."

So it is immaterial whether we consider the deeds from the Mokelumne Indians, put in evidence by Coleman, sufficient to constitute color of title, or otherwise.   We are unable to perceive that these deeds, or the certified copies of papers from the Surveyor-General's office offered in evidence by defendant

Coleman and rejected, are entitled to cut any figure in the case.

The next principal error relied on by appellants is that, in admitting in evidence the Cleal survey and rejecting the Brewster survey, the Court adopted an erroneous theory in locating the land described in the Shaddon deed.   The construction of the description, in the conveyance from Shaddon to Hicks, was a question to be determined by the Court. Neither theory adopted by the respective surveyors was in all respects correct.   But the Cleal survey was based upon the correct theory in every particular except the line opposite the river.   The deed calls for *one league*, and the first boundary is to be the Cosumnes River.   It is well settled by numerous authorities that where a river is named as a boundary the boundary line follows the meanderings of the stream.   It is also established by the authorities, that when a line is to run up or down a stream, not navigable, a given distance, the meanderings of the stream are to be followed until the required distance when reduced to a straight line is attained— and where courses are not specified the other lines are to be run in such a manner that the land shall be in a form as nearly rectangular as possible.   Thus in *Craig* v. *Hawkins' Heirs,* 1 Bibb, 54, a thousand acres of land was to be laid off, commencing at a point on a "branch of the Jessamine, running down the same one mile, extending northwardly for quantity."   The Court say: "The beginning being admitted, it will only be necessary to construe the expressions 'running down the stream;'" and it was held that these expressions "clearly import that the branch was intended to be one boundary of the claim, and that it was to form the base of the survey."   And the Court say that the land should be surveyed by beginning at the designated point, "and running thence down the branch, with the meanders thereof, one mile, when reduced to a straight line; and from the beginning and the termination of said line of one mile, extending lines off from the branch northwardly, at right angles, to the general course of so much of the branch as will be embraced by the survey,

so far that a line drawn at right angles to those two last mentioned lines, and parallel to the general course of the part of the branch so embraced as aforesaid, will include the quantity of one thousand acres." See, also, *Clalk* v. *Stribling*, 1 Bibb, 123; and there are many other authorities to the same effect, which, it would seem need not be cited to sustain a construction in itself so reasonable.

The first line, then, is to commence at the point of the river called "Paso Viejo," and is to follow the meanders of the river until a point in the river is reached one league distant, when reduced to a straight line, from the point of beginning, and the straight line between these two points will form the proper basis for laying off the other lines. The second line starts from the point in the river called "Paso Viejo," and runs in a line directly crossing the line of the river. It is plain to us that this line should run at right angles with the line last referred to, being the line of the general course of the river within the survey. The fourth line is to run "one league, or five thousand varas," parallel with the last mentioned line; and the third line is to run one league, or five thousand varas, parallel with the Cosumnes River. We think the plain construction of the call for the third line is, that it is to run parallel with the river in all its meanderings, and not parallel with its general course. This is the obvious import of the terms "parallel with the Cosumnes River." No other line can be said to be parallel with the river.

In the cases where the line opposite the river has been run as a straight line, there is no specific description of that boundary. The description generally gives the starting point and the river as the first boundary, then says running in some designated direction for quantity; and it is held in such cases that a straight line is to be run corresponding with the general course of the river within the survey the designated distance, if given; if not given, far enough to constitute one side of a square containing the given quantity; that the side lines are to be drawn at right angles from the extremities, and then the fourth line to be drawn at a sufficient distance from

the river to include the required quantity between it and the river.  But in the case under consideration the direction of the line opposite the river is given in express terms.  (See *Keith* v. *Reynolds*, 3 Greenl. 936 ; *Williams* v. *Jackson*, 5 Johns. 506 ; *Van Gorden* v. *Jackson*, 5 Johns. 441.)

The construction we have given to the calls of the deed will give the exact quantity called for—one league.   While the theory upon which the Brewster survey is made would give less than a league, the construction which makes the third line a straight line, parallel with the general course of the river, would in this instance give more than a league.   Had the meanders of the river been different, the quantity might have been much more, or much less than a league, depending upon the extent and direction of its sinuosities.   The construction we have put upon the calls of the deed is the only one that harmonizes the quantity called for with the extent and direction of the lines, and in our judgment is the only reasonable construction the language will bear.   The distance on the third line is made to harmonize with its meanderings, upon the same principles that the distance is measured on the river boundary, which is parallel with it.

The plat of the Cleal survey in evidence is constructed on the principles we have indicated, with the exception of the third line.   The third line is parallel with the general course of the river, instead of its meanderings, as it ought to be. In this respect it is erroneous.   The judgment follows the Cleal survey and is also erroneous in the same particular, but correct in all other respects.   It therefore becomes necessary to inquire whether this error is fatal to the judgment, or whether it can be so modified as to do justice between the parties.

It is not pretended by appellants that Coleman's land and a portion of Castle's is not within the calls of the Shaddon deed to Hicks, even upon the theory of the Brewster survey, which is by far the most favorable one for the appellants that has been advanced.   It is only contended that less of Castle's land would be embraced in the Brewster survey than in any

other, and that Randolph's would be entirely excluded. The testimony shows that some twenty or thirty acres only of Randolph's land lay within the Cleal survey in the southwest corner, and the jury necessarily found that a part at least was within this survey. At that point the line parallel with the meanderings of the river, which we have adopted as the true line, comes down as far as and a little below the straight line of the Cleal survey, and therefore necessarily includes the same land in the possession of Randolph, or at least a part of it, that is included in the Cleal survey. To entitle the plaintiff to a judgment, it is enough that each of the defendants is in possession of any portion of the land belonging to plaintiff; and as no damages were awarded, the extent of the land in the wrongful possession of the defendants, so far as it affects the right of plaintiff to a judgment, is not a matter of any consequence to them, provided they are not ejected from any lands of which they are rightfully possessed.

There is no doubt, then, that the plaintiff is entitled to recover as to all the defendants against whom judgment is entered; but the difficulty is, the record is not in such a condition that we can make the required modification of the judgment. The complaint, instead of following the description contained in Shaddon's deed to Hicks, adopts a description as to the third line corresponding with the theory of the Cleal survey; the verdict is general, giving no specific boundaries of the tracts in possession of the several defendants, and must be held to extend to the boundaries stated in the complaint and of the Cleal survey; the judgment follows the description in the complaint. The complaint, the evidence as admitted, the verdict and the judgment are in entire harmony, and we cannot modify the judgment without setting aside the verdict and finding another upon the evidence in harmony with the construction of the Shaddon deed adopted. by us. This we are not authorized to do, and for this reason the judgment must be reversed and a new trial ordered. (*Clark* v. *Huber*, 20 Cal. 198.) Had the complaint and judgment followed the description of the deed to Hicks, the judg-

ment might have been affirmed. But it does not, and, as more land in the possession of defendants is included in the judgment than plaintiff is entitled to recover, a new trial is rendered necessary.

There is no error in the instructions relating to the declarations of Hicks. Those declarations, under the circumstances shown by the record, were clearly insufficient to constitute an estoppel as to defendants, Castle and Randolph, and the Court, might safely have directed the jury to disregard them altogether.

No exception was taken at the time to a joint verdict, admitting it to be joint, or to the judgment being entered jointly. True, at the commencement of the trial separate verdicts were demanded. But at the close of the case neither the attention of the Court or the jury appears to have been called to the matter. Had the counsel called attention to it at the time the case was submitted, doubtless the Court would have given the proper directions, or have had the verdict corrected in this respect on the coming in of the jury. At least there would have been an opportunity given for such action. It not having been done, the objection cannot be taken for the first time in this Court. Besides, no damages were awarded, and the defendants are in no way injured by the error, if it be such.

There is no error in the charge of the Judge. If there is any error in those parts to which exception has been taken in the arguments, it consists in being more favorable to the defendants than the evidence and the law applicable to it justified. The exceptions to the charge are too general in their terms. We take this occasion to remark that exceptions to a charge ought to point out the specific portions excepted to, and to be made at the time of the trial, in order that the Judge may have an opportunity, before the jury retires, to correct any error he may have inadvertently fallen into, in drawing up the charge, in the hurry and perplexities of the trial.

The other points not particularly referred to in this opinion do not require comment.

As the same questions will arise upon another trial, we have thought proper to discuss all the important questions in the case.

Judgment reversed and a new trial ordered.

Mr. Justice CURREY, having been of counsel, did not sit upon the hearing of this case.

Mr. Justice RHODES expressed no opinion.