# REPORTS OF CASES

DETERMINED IN

# THE SUPREME COURT,

## APRIL TERM, 1867.

33 219
96 508

## F. W. FRATT *v.* R. B. WOODWARD *et als.*, AND F. W. FRATT *v.* R. H. BLOSSOM.

CONSTRUCTION OF BOUNDARY LINES GIVEN IN DEED.—If in a deed, the boundary line on one side of the land conveyed is described as running from a given monument easterly to a creek parallel with the southern line of another tract of land, and such southern line of the other tract of land is not a straight line, but meanders, then the boundary line described in the deed will run parallel with the other line in its meanderings, and not straight, and parallel with its general course.

MEANING OF WORD "EASTERLY."—The word "easterly," when used alone, will be construed to mean due east, but when other words are used for the purpose of qualifying its meaning, it means precisely what the qualifying words make it mean.

MONUMENTS AND LINES NAMED IN DEED.—The law will presume a straight line was intended in a description of land in a deed, when the call is simply from one monument to another; but when the call is from a monument to a creek, without naming a given point, the creek is not a monument in the sense of that rule.

LINE BETWEEN MONUMENTS GIVEN IN A DEED.—The law does not declare in favor of a straight line between monuments, where the language employed in the deed shows that a different line was intended.

EXTRINSIC EVIDENCE IN CASE OF AMBIGUOUS DESCRIPTION. — A boundary line described in a deed as commencing at a tree and "thence running easterly parallel with the southern line of said Antelope Ranch, according to the survey of the

same made by the United States Surveyor-General for said State, to said Antelope Creek," is not repugnant nor ambiguous, and evidence *aliunde* is not admissible to show that a straight line was intended parallel with the general course of said southern line of said Antelope Ranch.

MEANING OF WORDS "PARALLEL LINES."—By mathematical definition, "parallel lines" are straight lines; but in common speech about boundaries, the words are often used to represent lines which are not straight but photographs of each other, and Courts, in passing on questions of boundaries, often use them in the latter sense.

WORDS OF DEED.—A mere matter of convenience or taste cannot be allowed to overrule the express language of a deed.

APPEAL from the District Court, Sixth Judicial District, Sacramento County.

Job F. Dye had a grant of land made to him by the Mexican Government, which was confirmed by the United States. On the 19th day of November, 1857, he entered into the following contract with Fratt and King:

"Memorandum of a contract made this day between J. F. Dye of the first part, and Francis W. Fratt and Thomas F. King of the second part, to wit: The said J. F. Dye does agree to sell to the second party eight thousand acres of land, more or less, as may be found to be contained within the boundaries as described. To commence at the mouth of Antelope Ceeek; thence running up the River Sacramento to the old wood yard to a sycamore tree, marked with four notches; thence parallel with J. F. Dye's south line to Antelope Creek; thence up the centre of Antelope Creek to a large oak tree, about three hundred and fifty yards below the mouth of a slough running out of Antelope Creek through the prairie emptying in the Antelope again; thence east running parallel with J. F. Dye's south line to J. F. Dye's eastern boundary line, as surveyed by order of the Surveyor-General; thence southerly to J. F. Dye's southeast corner; thence to the place of beginning. Also, to deliver five hundred head of branded cattle, large and small, as they may come. Provided that the party of the second pay unto the said J. F. Dye twenty-six thousand dollars."

On the 24th day of November, 1857, he executed to said

Fratt and King a deed of the land containing the following description :

"All the certain lot, piece or parcel of land situate, lying and being in the County of Tehama, State of California, and known and designated as follows: All that certain tract or parcel of land being a part of what is known as the Antelope Ranch, lying upon the eastern side of the Sacramento River, and beginning at a point on the eastern bank of the Sacramento River at the junction of Antelope Creek with said river ; thence following the meanderings of said river northerly to a sycamore tree, with four notches, standing on the east bank of said river above an old wood yard at a point about one and a half miles in a direct line from said point of beginning ; thence running easterly parallel with the southern line of said Antelope Ranch, according to the survey of the same, made by the United States Surveyor-General for said State, to said Antelope Creek ; thence up the centre of said Antelope Creek to a point about four and a half miles up said creek, above where the said line strikes the same, to an oak tree on the eastern bank of said creek marked with three notches ; thence parallel with said southern line to the eastern line of said ranch, according to said survey, and thence down the said eastern line to the southeastern corner of said ranch, and thence along the southern line of said ranch to the point of beginning, containing eight thousand acres."

The land conveyed was a portion of the grant which was sometimes called the "Antelope Ranch." The plaintiff, before the commencement of these actions, had succeeded to all the rights of King in the premises. On the 26th day of November, 1862, Dye conveyed to the defendants, Woodward et al., the whole of the "Antelope Ranch," excepting from the deed the tract of land previously conveyed to Fratt and King.

The official survey of the grant, or the "Antelope Ranch," had not been made when the deed to Fratt and King was executed, and was not confirmed until some time in 1858. By said official survey this southerly line was not straight, but a

succession of straight lines, forming what is called a broken line. Fratt claimed that the line described in his deed as commencing on the bank of the Sacramento River at a syca-more tree with four notches, and " thence running easterly parallel with the southern line of said Antelope Ranch  *  * to said Antelope Creek," was not a straight line, but should run parallel with the southern boundary line of the Ante-lope Ranch as the same changed its course. By the lat-ter claim he would get more land than he would by having a straight line. He commenced two actions in May, 1865, in Tehama County ; one against Blossom, in ejectment, to recover possession of the land in dispute, and the other against Wood-ward *et al.,* to recover damages for an alleged trespass in cut-ting trees on the same land. Blossom was the tenant of Woodward *et al.,* who appeared in the action against him, and asked for affirmative relief. The place of trial was afterwards changed to Sacramento County. On the trial in the Court below, evidence was received tending to show that Fratt and Dye, at the time of and after the execution of the deed to Fratt and King, understood the line in dispute to be a straight line. Antelope Creek and the Sacramento River each run in a southwesterly direction. The creek is several miles east of the river. The actions were tried before the Court, and it was stipulated that the evidence taken in either cause should be read and used in the other. Plaintiff recovered judgment in each action, and defendants appealed.

The other facts are stated in the opinion of the Court.

*G. F. & W. H. Sharp,* for Appellants.

The line claimed by defendants is a straight line, and upon this fact alone defendants were entitled to recover. The line from the sycamore tree to the creek is a straight line, because the law presumes it to be so. All lines are construed to be straight ones, unless expressly controlled by the deed. (2 Wash. Real Prop. 632.) Where a line is to run between two monuments, a straight line is conclusively presumed. (*Allen* v. *Kingsbury,* 16 Pick. 235 ; *Jackson* v. *Reeves,* 3 Caine, 293.)

The monuments are the sycamore tree and the creek. Where a line commences to run from a fixed monument on a given line to another, it must continue in the same direction. (*Dawes* v. *Prentice*, 16 Pick. 435.) This line commences from the sycamore tree and runs east. Where a direction is given, a due direction is presumed, unless controlled by the deed. (*Bosworth* v. *Danzien*, 25 Cal. 296.) By extending this line due east would render it a straight line. It will be presumed straight because it is to run parallel. Parallel lines are straight lines. (Davies' Legendre, 15.) Parties using scientific words are bound to know the meaning of them. (*Morrison* v. *Wilson*, 30 Cal. 344.) The language of the parties in the deed shows that a straight line was intended. Whenever running their courses by a river or other irregular line, they use appropriate words denoting that intention, as "meanderings," or "up the centre," the law will presume a line run by an irregular line would follow its meanderings, etc. The parties expressing the presumption of the law as to irregular lines, all other lines must be construed straight. *Expressio unius est exclusio alterius.* Parallels, like all other terms in science, have well and clearly defined meanings. They are straight lines, equidistant from each other. (Davies' Legendre, 15.) And this meaning of this term has received a judicial interpretation. (*Croghan* v. *Nelson*, 3 How. U. S. 196.) The call for parallel can be stricken out as *falsa demonstratio*, if it is inconsistent with the other calls in the deed. That it is inconsistent with every call in the deed, if plaintiff's theory is correct, we have abundantly shown. Striking out parts of description is of very frequent occurrence. (2 Parson's Contracts, 17.) Words necessary to ascertain the premises must be retained, but those not necessary for that purpose may be rejected. (4 Mass. 205; 6 Peters, 328.) If some part is inapplicable or untrue, and enough remains to show what was intended, the deed must be upheld, and the false and uncertain part rejected. (19 Wend. 175; 2 Johns, 471; 2 Mass. 388; 5 Mass. 355.) The case of *Magoun* v. *Lapham*, 21 Pick. 135, completely covers this question.

*R. C. Clark,* for Respondent.

It is contended for the appellants that the word " easterly "
means due east.   This would be true if there was nothing else
to vary or control the line, and if the parties intended such to
be the meaning of the word, in the connection in which they
used it, for it is conceded in *Morrison* v. *Wilson,* 30 Cal.
344, that parties to a contract may give any meaning they
please to the terms used by them, and that such meaning,
when ascertained, shall be taken to be the true meaning of the ·
word, so far as that contract is concerned.   The word " east-
erly " is not the controlling word in the call, but is itself con-
trolled by the words " parallel with the southern line of the
ranch as surveyed," etc.   Any line starting from the sycamore
tree, and running any course between northeast and south-
east, would satisfy the call " easterly," but there could be but
one line that would satisfy the other portions of the call, and
that line must be parallel with the southern line of the ranch
as surveyed.   Courses and distances in a call always give way
to monuments, either natural or artificial.   Defendants claim
that the southern line of the ranch is a crooked line, and must
be reduced to a straight line, representing its general course,
and then a parallel run to the straight line thus obtained,
because it is impossible to run a parallel to a crooked or
curved line.   This position has been declared to be untenable
by this Court, and the rule settled in favor of respondent, in
*Hicks* v. *Coleman,* 25 Cal. 142.   The line to be run in that
case was " one league or five thousand varas parallel with the
Cosumnes river."   The Court say :  " We think the plain con-
struction of the call for the third line is that it is to run par-
allel with the river in all its meanderings, *and not parallel
with its general course.*   This is the obvious import of the
terms parallel with the Cosumnes River.   *No other line can be
said to be parallel with the river."*   This authority would seem
to be conclusive in our favor.   It authoritatively establishes
the fact that a parallel can be run to a crooked or broken or
curved line, and in a proper case requires it to be done.   Now

two lines equal in all their parts must be equal as a whole, and two lines parallel in all their parts must be parallel lines. The case of *Van Gordon* v. *Jackson*, 5 John., required the lines of a patent to be run curved or crooked, and the judgment of the Court below, which required the lines to be run straight, was reversed.

*Robinson & Dunlap*, also for Respondent.

The second call in the deed says: "Easterly, parallel with the southern boundary," etc.   What would be more natural than to say *easterly*, when starting from a west line, to run parallel with a southern line, to show that they were to turn to the right, instead of the left.   This of itself would be sufficient to account for the word *easterly* appearing.   Now if they had said, "easterly to Antelope Creek," there would have been no difficulty—it would have been a straight line, and would not have been helped with a definition, but they add the words, "parallel to the southern line," etc.   This limits the course to a line parallel with another line, at whatever point of the compass that might be.   This could not be the line already run; because that was run *northerly*, thereby designating the west line of the ranch, and the parallel is to be to the *southern line*.   Again, the last call of the deed starts at the southeast corner of the ranch, and runs along the southern line of the ranch to the place of beginning.   There they expressly state what they understand by this southern line of the grant or ranch.   This line is fixed by the survey of 1857, and it is a monument, and cannot be moved.   If we establish the law to be that a parallel line is to be one equidistant, without any regard to direction, then the construction of this deed is plain.   In *Williams* v. *Jackson*, 5 J. R. 505–6, the Court hold that the line should be run so as to be equidistant at every part, and whatever the course or angle, it seems to make no difference.   In *Jackson* v. *Bogardus*, 5 J. R. 441, the Court holds that in running the lines they should be run at points

equidistant from the points or planes mentioned, or in other words, parallel with certain crooked lines. The case of *Penn* v. *Baltimore*, 1 Vesey, Sen. 452, decides the same point, and holds the parties to a crooked parallel. These cases are referred to as showing good argument and authority for our theory of this survey, that a parallel line means one equidistant from the southern line of the ranch as surveyed in 1857, and by which we purchased. A straight line is only presumed when two monuments are given, and the line is from one to the other without any other direction. In this case there is but one monument which is fixed as a terminus of the line, to wit, the sycamore tree. The other end of the line is to strike Antelope Creek at some point between its mouth and the oak tree with three notches, which is five or six miles therefrom, and which forms the northwest corner of the survey or call of the deed. Now to find the particular point on the creek where the line is to strike. The call of the deed says you must run a particular course, to wit, parallel to the southern line of the survey. This takes away any presumption of a straight line between monuments, because a course is given, and it lacks a monument at one end, which can only be found by following the given course.

By the Court, SANDERSON, J.:

The only point involved in these cases is answered by the case of *Hicks* v. *Coleman*, 25 Cal. 143. In that case the third call or line in the deed was expressed in these words: "On the south or southeast by a line that runs one league, or five thousand varas parallel with the Cosumnes River." The language which describes the second line in the deed from Dye to Fratt and King, and upon the true meaning of which these cases turn, is as follows: "Thence running easterly parallel with the southern line of said Antelope Ranch, according to the survey of the same, made by the United States Surveyor-General for said State, to said Antelope Creek."

In *Hicks* v. *Coleman*, the land was bounded on one side by

the Cosumnes River, of which the course was not straight, but meandering; and the question was, whether the line upon the opposite side, and which the deed described as parallel to the river, was to be a straight line parallel with the general course of the river, or a line with the same windings or curves as the river. We said: "We think the plain construction of the call of the third line is, that it is to run parallel with the river in all its meanderings, and not parallel with its general course. This is the obvious import of the terms 'parallel with the Cosumnes River.' No other line can be said to be parallel with the river."

The only difference between the language of the call in this case and the language in Hicks' case, lies in the use of two descriptive terms instead of one. In the latter case the word "parallel" only is used, while in the former the words "easterly parallel" are used; but this does not vary the result; on the contrary the result is the same as it would have been had the word "easterly" been omitted. No man looking at the map would hesitate to say that the Sacramento River constitutes the western boundary of the Antelope Ranch, and the junction of the Antelope Creek with the river its southwest corner, and the line running from the junction eastward its southern boundary. That such was the understanding of both Dye and Fratt is manifest from their testimony as well as the general reference to the location of the Antelope Ranch made at the commencement of the description in the deed, where it is spoken of as lying upon the eastern bank of the Sacramento River. They start at the junction and run thence "northerly," following the meanderings of the river, to a sycamore tree. Here they rest, and as they do not propose to follow the river any further, but to take a line leading from it, they designate the general direction of the new line as "easterly," that is to say, to the eastward of the river. It is true, as claimed by counsel for appellants, that the word "easterly" when used alone will be construed to mean due east; but that is a rule of necessity, growing out of the indefiniteness of the term, and has no application where other words are used for

the purpose of qualifying its meaning. Where such is the case, instead of meaning " due east " it means precisely what the qualifying word makes it mean. Had they used the word " easterly " only, the law would have declared in favor of a straight line running due east from the sycamore tree to Antelope Creek ; but having used another word in connection with it, both words must be consulted for the purpose of ascertaining their intent, for there is no such repugnance between the words as to require the rejection of either as a false demonstration. Giving to each word its proper signification, we have a line which leads off to the eastward of the river and which is also parallel with the southern boundary of the Antelope Ranch. While it is true that the law will presume a straight line was intended when the call is simply from one monument to another, yet Antelope Creek being a stream of several miles in length is not a monument in the sense of that rule, nor does the law declare in favor of a straight line between monuments where the language employed in the deed shows that a different line was intended.

The deed fixes no particular point on Antelope Creek to which the line is to be run. Yet to have fixed a point on the creek as the termination of the second line would have been as convenient as to fix the point on the Sacramento River, or the point on the creek above where the line leaves the creek. Why it was not done, is therefore manifest. They could not both fix that point and provide for a line which would be parallel with the south line of the ranch, for they were ignorant as to what the south line was—whether straight or broken—so by the exigencies of the case they were forced to elect between a straight line or one which would duplicate the south line, whatever upon a survey it might turn out to be. That they intended the latter alternative is clearly manifested by the language which they employed. Had they intended a straight east line from the sycamore tree to Antelope Creek it would have been the most natural thing in the world to have said so. To establish such a line, there could have been no occasion whatever to omit the location of the

point on the creek or to refer to the south line at all; and such omission and reference can be explained only upon the theory that the south line was intended, in any event, to control the direction or course of the line from the sycamore tree to the creek. They may have supposed that the south line was a straight line, and hence that the line between the river and the creek would also be straight; but it is quite clear that they did not act upon that supposition as their controlling idea, for they must have known that the south line might not turn out to be straight, and with that contingency before them they expressly provided that the line which they were locating should be, not straight, but parallel with the south line. Hence, that the two lines should be parallel, whether straight or broken, was the controlling idea of the parties, is placed beyond a doubt, whether we look at the language of the deed only or take into consideration also the acts of the parties and the attending circumstances. That such was the case is especially apparent from the written contract of sale which was drawn up at the time. The line is there described by the word "parallel" only, nothing being said as to course. The word "easterly" was not inserted in the deed at the suggestion of either of the parties, but seems to have been inserted by the conveyancer, who drew the deed some time afterwards, of his own motion.

By itself considered the language of the deed is not repugnant or ambiguous, but of plain and obvious import, and there would seem to have been no occasion to resort to extrinsic evidence, but evidence *aliunde* was admitted notwithstanding the objection of the defendants and we have therefore considered the question by its light as well as by the language of the deed; but we do not desire to be understood as implying that the evidence *aliunde* was admissible. On the contrary, had the judgments gone the other way, it is more than probable that we should have held that the Court erred in admitting it. If there was any mistake in drawing the deed these are not actions to reform or correct it, and the language, as

already intimated, does not seem to stand in need of any explanation.

There is no force in the argument of counsel for appellants founded on mathematical definitions. By definition, parallel lines are undoubtedly straight lines; but in common speech about boundaries, or in a geographical sense, the words, as we all know, are often used to represent lines which are not straight but are the photographs of each other. The term is used for the want of a better and not because it in all respects fits the use to which it is applied. Even counsel, in arguing this case, and we, in considering it, have employed the word in this latter sense, and so have other Courts before us, in passing upon like questions. (*Jackson* v. *Lucett,* 2 Caines, 363; *Williams* v. *Jackson,* 4 Johns. 489; *Winthrop* v. *Curtis,* 3 Greenleaf, 103–110.) It is so used to avoid a circumlocution, and while such use is not technically exact, it is not obscure, and there is no difficulty in understanding what is meant. Nothing is more common than to speak of boundaries which are not straight as being parallel.

Nor is there any force in the argument founded upon the idea that parties in selling or buying land are more likely to measure by straight lines than by broken or curved, on the ground that the former are more convenient for the purposes of fencing and cultivation. Doubtless straight lines are the most convenient for those purposes, and *ceteris paribus,* that circumstance would be entitled to weight; yet, according to Hogarth, curved lines are more beautiful than straight, and there is no reason why parties may not measure land by them if they choose to do so; at all events, a mere matter of convenience or taste cannot be allowed to overrule the express language of a deed.

Judgment and orders affirmed.

Mr. Justice RHODES did not express any opinion.