37 63
85 366

</div>

## PIERCE *versus* FAUNCE.

Construction of deeds.

Of the terms "more or less," in a deed.

The quantity of land named, governs the construction of a deed, in the absence of a reference to monuments, or of other more definite description.

Where no practical construction of a *conveyance* is given by the parties, by establishing monuments or boundaries, their acts upon the land and declarations concerning it, are not admissible in evidence to affect *its legal construction.*

ON REPORT from *Nisi Prius*, WELLS, J., presiding.

TRESPASS *quare clausum*, and cutting two trees.

The cutting of the trees was admitted, and their value; and both parties claimed title to the land on which they stood.

The plaintiff claimed title under a levy made in 1842, upon the land as the property of William Prince, on an execution in favor of William Cousins, and by a deed of the land levied upon, from said Cousins to himself, dated in 1845.

The defendant traced his title, by introducing a deed of

warranty from James Dunn to Robert Waterman, for the consideration of $500, dated May 3, 1814, in which the description was in these words, "a certain tract of land situated in Hebron, in the county of Oxford, containing sixty-seven acres more or less, and being on the north side of the lot marked 'G,' in said Hebron, (now Oxford) with privilege of a road or roads through the same if necessary, and being the same land I purchased of Joshua, Abba and Godfrey Grosvenor."

Also a deed from said Waterman to *William Prince,* dated May 12, 1817, for the consideration of $450, containing the same description in the deed of James Dunn, excepting that it concluded thus, "being the same I purchased of James Dunn."

Also a deed from said Prince to Mary Chipman, dated Oct. 26, 1836, for the consideration of $167, in which the description read thus: "a certain tract of land situated in said Oxford, containing twenty-five acres, (more or less,) and being on the north side of the lot marked "G," in said Oxford, with the privilege of a road or roads, if necessary, through the same, it being the same land I purchased, and was deeded to me by Robert Waterman."

Also a deed from said *Chipman* and her husband to Orville Byram, dated April 24, 1838, for the consideration of $200, in which the description read thus; "a certain tract of land situated in Oxford, containing twenty-five acres, more or less, and being on the northerly side of lot marked 'G,' in said Oxford, with the privilege of a road or roads, if necessary, through the same, it being the same land that William Prince, of said Oxford, bought of Robert Waterman."

Also a deed of mortgage of the same premises from said Byram to Amos Chipman, the husband of said Mary, with the notes unpaid and assignment of the same to the defendant.

The plaintiff then introduced a deed to the defendant, of Diana Byram, dated Feb. 23, 1847, conveying to him her

right of dower in the land described in Chipman's deed to Byram. Also a deed from the defendant to Harriet H. Faunce, dated August 12, 1848, for the consideration of $200, the description being the same as that in the deed from William Prince to Mary Chipman.

There was much evidence introduced tending to show by Byram's declarations, while he occupied under his mortgage deed, that he claimed only 25 acres off lot " G," and the acts of *William Prince,* during that time, as to his occupancy of part of lot " G," by pasturing and cutting wood, and Prince's declarations to the officer who made the levy, " that he sold off 25 acres only of lot " G." Chipman also testified, that in 1850, in answer to defendant, he told him " that he bought only 25 acres of William Prince."

There was much other testimony introduced by both parties, as to the acts and declarations of those connected with these several conveyances, and all the parol testimony was seasonably objected to by one or the other party.

After all the evidence was out, it was agreed, that the case should be reported by the Judge, and submitted to the full Court, upon so much of the testimony as was legally admissible, and a nonsuit or default to be entered as the law may require. And in case a default shall be entered, the amount of damages was agreed.

*N. Clifford,* for plaintiff.

1. The levy conforms in all respects to the requirements of law and includes the land where the trespass was committed.

2. Where a deed is of doubtful construction as to boundaries, the construction given by the parties, as shown by their acts and admissions, is deemed to be the true one, unless the contrary is clearly shown. *Stone* v. *Clark,* 1 Met. 378; *Rockwell* v. *Adams,* 6 Wend. 467; 3 Mass. 362; 10 Mass. 149; 1 Term R. 701; 8 Cow. 273; 7 East, 199; 7 Met. 484.

3. Parol evidence of the practical construction given to a deed, by the parties thereto, or those claiming under them,

is admissible, when the language thereof, especially in the description of the land conveyed, is doubtful. 16 Johns. 17; 8 Conn. 439; 10 Met. 27; *Clark* v. *Withey,* 19 Wend. 320; 4 Dana, 336; 13 Cow. 309; 7 Barr. 185.

4. Deeds are to be construed so as, if possible, to effectuate the interest of the parties. *Bryan* v. *Bradley,* 16 Conn. 474; *Thomas* v. *Sumner,* 3 Sum. 170; *Moore* v. *Griffin,* 22 Maine, 350.

5. The declarations of a former owner of land, made while he was proprietor of the estate, respecting the extent and boundaries thereof, are competent evidence against those claiming title under him. *Treat* v. *Strickland,* 23 Maine, 234.

6. The defendant is limited by the terms of his deed, to twenty-five acres, and the land is situated according to the location at the time of the conveyance. 2 Ham. 327; 7 Wend. 136; 14 Wend. 625; 4 Monr. 63; 13 Ala. 31; *Hackett* v. *Sawyer,* 14 N. H. 65.

*May,* for defendant.

1. The levy on which plaintiff relies, gives no title; because the officer's return does not show, that the debtor, whose land was taken had any notice to select an appraiser, or that he did select one. R. S. c. 94, § 4; *Munroe* v. *Reding,* 15 Maine, 153; *Bannister* v. *Higginson,* 15 Maine, 73; *Dwinel* v. *Soper,* 32 Maine, 119.

2. The deed from Dunn to Waterman conveys "sixty-seven acres, more or less," on the north side of lot G. If there be no language in the deed more certain as to quantity than the words "sixty-seven acres, more or less," the words "more or less" will be rejected, and exactly sixty-seven acres will pass by the deed. *Jackson* v. *Loomis,* 18 Johns. 81; 19 Johns. 449; *Worthington & al* v. *Hyler,* 4 Mass. 205; *Blaney* v. *Rice,* 20 Pick. 62; *Cutts* v. *King.* 4 Maine, 482; *Stone* v. *Clark,* 1 Met. 378.

3. The reference in the deeds from Dunn to Waterman, and from Waterman to Prince, and from Prince to Chipman, shows that it was the intention of the parties in each deed,

to convey the same tract or parcel of land that each grantor had before had conveyed to him. These references being more certain than the number of acres mentioned in the deeds, as qualified by the words more or less, must control and pass the whole land which had been conveyed by the previous deed. *Abbott* v. *Pike*, 33 Maine, 204.

4. The parol evidence in the case, to the construction, is inadmissible, and if admitted would not change the case.

HOWARD, J.—The plaintiff claims title under a levy of execution upon the *locus in quo*, as the property of William Prince, in July, 1842. The defendant not denying the acts of alleged trespass, justifies under one deriving title from Prince, in 1836. It is assumed by the parties that the premises are a part, at least, of "lot marked G, in Hebron."

In 1814, Dunn conveyed to Waterman by deed of general warranty, "a certain tract of land situated in Hebron, (now Oxford,) in the county of Oxford, containing sixty-seven acres, more or less, and being on the north side of the lot marked "G," in said Hebron, with privilege of a road or roads, through the same, and being the same land I purchased of Joshua Albee and Godfrey Grosvenor." It appears by the plan and survey submitted, that lot G, contained sixty-seven acres only.

In the absence of a more definite description, or of other monuments, the quantity of land named must govern in the construction of the deed. The terms "more or less" neither limit nor extend the grant, but are generally used, in the absence of definite knowledge of the boundaries and extent of the land intended to be conveyed, to exclude a construction that the quantity named in the conveyance should be conclusive upon the parties. *Cutts* v. *King*, 5 Maine, 482; *Blaney* v. *Rice*, 20 Pick. 62. The conveyance of Dunn would, consequently, embrace the whole of lot G.

Waterman, in 1817, by a like deed of warranty conveyed to Prince, describing the premises in the same terms used in the deed of Dunn to himself, and closing the description

with, "it being the same land I purchased of James Dunn." By that conveyance, Prince acquired title to all the land in lot G. This is not controverted; but in 1836, he conveyed to Mary Chipman, by deed with general covenants of warranty, "a certain tract of land situated in said Oxford, containing twenty-five acres, more or less, and being on the north side of the lot marked G, in said Oxford, with the privilege of a road or roads, if necessary, through the same, *it being the same land I purchased, and was deeded to me by Robert Waterman.*"

It is a legal maxim, that every man's grant shall be taken by construction of law most forcibly against himself. Coke, 1 Inst. 183, a. By referring to the deed of Waterman to him, Prince made that a part of his conveyance; and it must be so regarded by legal construction. *Field* v. *Huston*, 21 Maine, 69; *Marr* v. *Hobson*, 22 Maine, 321. The description, though not agreeing in all respects, is sufficiently definite to show what estate was intended to be conveyed; and is broad enough to embrace the whole tract contained in lot G. The number of acres mentioned, when qualified by the terms *more or less*, furnish but slight evidence of the extent of the grant; and when followed, as in the deed from Prince, by a more definite description, it may be regarded as an estimate merely, by the parties, of the quantity of land in the absence of reliable information, rather than a designation of the extent of the tract conveyed. Particular recitals do not restrict a grant, when the general language of the conveyance is intelligible and effective.

There is not satisfactory evidence, that the parties gave a practical construction to the conveyance of Prince, by establishing monuments or boundaries, and their acts and declarations do not affect its legal construction. The declarations of Prince and Chipman, after they had conveyed, tending to show the extent of their claims, and the construction of their deeds, were not admissible. The fence across lot G, was not proved to have been a division fence, limiting the occupancy of the different tenants; nor was the

occupation, and cutting trees upon the land by Prince, prov-
ed to have been under claim of title, with knowledge of
those claiming through his conveyance.    By that conveyance,
Prince parted with his title to lot G, and the subsequent levy
upon it, by his creditor was inoperative.    The plaintiff having
neither title, nor possession, cannot maintain the action of
trespass *quare clausum fregit.*              *Plaintiff nonsuit.*

SHEPLEY, C. J., and TENNEY and WELLS, J. J., concurred.
APPLETON, J., dissented.