[No. 7,989. Department One.—January 27, 1885.]

MARIA HALL, Appellant, v. J. M. SHOTWELL et al., Respondents.

DEED—DESCRIPTION—UNCERTAINTY.—Where, in a deed conveying a given quantity of land, there is not sufficient certainty in the other terms of its description, the number of acres is an essential part of the description.

ID.—STREAM AS BOUNDARY LINE—LOCATION IN SQUARE.—If a deed conveys a given quantity of land, and describes it as bounded on a stream on one side, starting at a given point and running along the stream, without specifying the length of the line, the required quantity of land is to be located by following the meanderings of the stream from the point named, until, reduced to a straight line, the straight line will be of sufficient length to form a square which would contain the required quantity; and thus, from the ends of this straight line, projecting lines at right angles with the same to such distance as a line drawn from one to the other, parallel with the straight line, will include the required quantity between it and the stream.

ID.—MORTGAGE—EXCEPTION—SUFFICIENCY OF DESCRIPTION.—A mortgage of land excepted from the operation thereof a certain tract described as "two hundred acres at Embarcadero of San Antonio, which are situated as follows : lying on the south side of the creek that empties into the bay at the said Embarcadero, which creek shall be the northerly line of said two hundred acres ; and the Bay of San Francisco (the estuary of San Antonio) being the westerly line, and the said two hundred acres to be in a square form. *Held*, that the description was sufficient for the purpose of location.

APPEAL from a judgment of the Superior Court of the city and county of San Francisco, and from an order refusing a new trial.

The facts are stated in the opinion of the court.

*B. S. Brooks*, and *Wm. & George Leviston*, for Appellant.

*Walter Van Dyke*, and *A. N. Drown*, for Respondents.

McKEE, J.—This was an action to determine adverse claims to a strip of land in that portion of the city of Oakland on which were laid out the towns of Clinton and San Antonio. When those towns were laid out, the land in dispute was situate on both sides of a small slough or creek, called Embarcadero Creek, which ran into the estuary of San Antonio, at what was known as the Embarcadero of San Antonio. At the commencement of the action there was on the bed of the creek, from Washington street to the Embarcadero, a street about sixty feet wide, called Commerce street, opened, graded and macadamized. The land includes the street and lands on each side of it, in the possession of the defendants, who claim title to their several possessions by *mesne* conveyances from James B. Larue.

On the other hand, the plaintiff claims title to the parcels of land in possession of the defendants, under a deed dated the 28th of February, 1878, from Eugene Sullivan to Horace W. Carpentier. The deed purports to convey "all the pieces, parcels and fractions of land, *if any*, not heretofore sold and conveyed by me, within the boundaries of that certain tract of land described in a certain deed from Antonio M. Peralta to Charles B. Strode, dated February 2, 1853, and recorded in book 2 of land titles, pages 435 and 436, in the recorder's office of Contra Costa county ; that is to say : extending from the Sausal creek to Indian creek or gulch, and from the summit of the mountains to the bay of San Francisco."

But Strode, on the day he acquired his title to that tract of land, mortgaged it back to Peralta, to secure him in the payment of an unpaid balance of the purchase money. At the same time he excepted from the mortgage a portion of the general tract, containing two hundred acres, which were described as follows : " Two hundred acres of land at Embarcadero of San Antonio, which are situated as follows : lying on the south side of the creek that empties into the bay at the said Embarcadero, which creek shall be the northern line of said 200 acres : and the bay of San Francisco (the estuary of San Antonio) being the westerly line, and the said 200 acres to be in a square form." Strode, therefore, was the absolute owner of this tract ; and he

subsequently conveyed it by deeds to Brady and Larue, the re-
mote grantors of those of the defendants who, under them, are
now in possession of portions of it.

Of the general tract, Sullivan, the grantor of the plaintiff,
acquired title by purchase under the Strode mortgage; but he
never acquired title, nor claimed to have acquired title, to the
particular tract excepted from the mortgage, and conveyed by
Strode to Brady and Larue ; on the contrary, this tract was ex-
cepted by Sullivan from the operations of the subsequent con-
veyances of the general tract between himself and the prior
grantees of Strode, who took their deeds subject to the Strode
mortgage.

But the plaintiff's contention is, that the particular tract was
not segregated from the general tract by a sufficient description,
and therefore the legal title did not pass by the conveyances
of Strode to Brady and Larue, so that the defendants who de-
raign title from them took nothing more than an equity—a mere
right to locate the quantity of 200 acres in the general tract.

This contention is not maintainable.   The description of the
particular tract is sufficient for location.   By the terms of the
description, form and quantity are expressed, *i. e.*, 200 acres in
a square form ; the bay of San Francisco is designated as one
of the sides of the square, *i. e.*, the westerly side, and the Embar-
cadero creek as another side, *i. e.* the northerly side—each being
at right angles with each other ; the Embarcadero on the bay
of San Francisco being the point of connection between them.

Now; it is well settled, where there is not a sufficient cer-
tainty and demonstration of the land granted, expressed in the
other terms of its description, the number of acres is an essen-
tial part of the description.   And, as was said by the court in
*Hicks* v. *Coleman*, 25 Cal. 142, "if a deed conveys a given
quantity of land, and describes it as bounded on a stream on one
side, starting at a given point and running along the stream,
without specifying the length of the lines, the required quantity
of land is to be located by following the meanderings of the
stream from the point named, until, reduced to a straight line,
the straight line will be of sufficient length to form a square
which would contain the required quantity ; and then, from the
ends of this straight line, projecting lines at right angles with

the same to such distance as a line drawn from one to the other, parallel with the straight line, will include the required quantity between it and the stream." An application of this rule to the description in question determines the sufficiency of the location of the 200-acre tract which Strode excepted from his mortgage to Peralta, and conveyed to the grantors of the defendants ; and as Strode's title passed out of him to them, prior to the conveyances under which the plaintiff claims, they are the rightful owners of the land south of Embarcadero creek, of which they are in possession.

As to that portion of the land in dispute north of the Embarcadero creek, Strode, when he acquired title to the general tract, took it subject to certain leasehold interests held by persons in possession north and south of the creek. Of those persons, Larue and Brady were in possession south of the creek, and J. F. and William Patten and M. Chase north of the creek —the creek being the boundary line between their possessions. Having obtained the legal title, Strode entered into arrangements with them for the surrender of their leases. For that purpose he excepted from his mortgage back to Peralta the 200-acre tract south of the creek, which included the respective possessions of Brady and Larue, and, first of all, subsequently conveyed to them undivided interests therein. Afterwards, he agreed in writing with the Pattens and Chase to convey them undivided interests in the 480 acres of land of which they were in possession, bounded on the south by the Embarcadero creek. That agreement was subsequently fulfilled by Strode's immediate grantees of the general tract, who, with the Pattens and Chase, divided the land into blocks and lots of the town of Clinton, as designated on the map of said town, and made partition of the same between themselves. In that partition there was allotted to the Pattens and Chase, and to one of the Strode grantees, two blocks of land, as designated on the map of the town, which include the parcels of land of which the defendants, north of the Embarcadero creek, are in possession. These blocks were afterwards conveyed by their owners in severalty, under the partition, to the remote grantors of these defendants ; and the conveyances were afterwards ratified and confirmed by Sullivan, the plaintiff's grantor, and the other proprietors of the

town of Clinton, by two quit-claim deeds, one dated September 5, 1854, and the other August 6, 1855, which bounded the lands by the " slough " or " creek," known as the Embarcadero creek ; therefore Sullivan had no title to the lands in dispute on the north side of the creek, on the 28th of February, 1878, the date of his deed to the plaintiff ; and as no title to any part of the lands passed by that deed to the plaintiff, judgment was properly entered for the defendants.

Judgment and order denying the motion for a new trial affirmed.

Ross, J., and McKINSTRY, J., concurred.

Hearing in Bank denied.