[No. 19521.    Department One.—July 9, 1895.]

D. HERBERT HOSTETTER, APPELLANT, *v.* LOS ANGELES TERMINAL RAILWAY COMPANY, RESPONDENT.

DEED—VAGUE DESCRIPTION—CONFLICTING LINES—STATEMENT OF ACREAGE.
Where the description of tracts of land by monuments, distances, or otherwise is vague and indefinite, by reason of conflicting lines, or by the omission of a line, or from any other cause, a statement of the acreage is an essential part of the description.

ID.—BOUNDARIES—NATURAL MONUMENTS—RIVER—LINE OF OFFICIAL BED.
Natural monuments are all controlling, and, where it is plainly apparent that a river is called for as a boundary, it would control the calls for distance; but, where it is not clear that the river was intended as a boundary, and the description is satisfied by monuments consisting of the bank and the east line of the official bed of the stream, which corresponds with the distances and acreage given in the deed, the identity of the lot granted is established by taking the east line of the official bed as a boundary line instead of the river.

ID.—CONSTRUCTION OF PUBLIC GRANT.—Grants of land by public bodies to private parties are to be interpreted in favor of the grantor.

APPEAL from a judgment of the Superior Court of Los Angeles County and from an order denying a new trial.    LUCIEN SHAW, Judge.

The facts are stated in the opinion of the court.

*Galbreth & Morrison,* for Appellant.

The estimation of acreage is merely a description of the premises and not words of limitation upon the quantity conveyed. (*Stanley* v. *Green,* 12 Cal. 164; *Roat* v. *Puff,* 3 Barb. 353; *Jackson* v. *Defendorf,* 1 Caines, 493; *Jackson* v. *Moore,* 6 Cow. 706.) Land bounded by a river extends to the thread of the river. (*Morrison* v. *Keen,* 3 Greenl. (Me.) 474; *Luce* v. *Carley,* 24 Wend. 451; 35 Am. Dec. 637; *Gavit* v. *Chambers,* 3 Ohio, 496; Civ. Code, sec. 830; *Arnold* v. *Elmore,* 16 Wis. 514; *Mariner* v. *Schulte,* 13 Wis. 692; *Walker* v. *Shepardson,* 4 Wis. 507.) The official map of the river is more to be relied on than a call for distances and quantity. (*Wolfe* v. *Scarborough,* 2 Ohio St. 361, 368; *McIver* v. *Walker,* 9 Cranch, 173; 4 Wheat. 444; *Lunt* v. *Holland,* 14 Mass. 149; *Davis* v.

*Rainsford,* 17 Mass. 207; *Magoun* v. *Lapham,* 21 Pick. 135; *Vance* v. *Fore,* 24 Cal. 436; *City of St. Louis* v. *Missouri Pac. Ry. Co.,* 114 Mo. 13; *Varick* v. *Smith,* 9 Paige, 551.) A lot may be as precisely or definitely described by number as by metes and bounds. (*Jackson* v. *McConnell,* 19 Wend. 175; 32 Am. Dec. 439; *Roat* v. *Puff, supra; Jackson* v. *Defendorf, supra; Mann* v. *Pearson,* 2 Johns. 37; *Jackson* v. *Barringer,* 15 Johns. 471; *Powell* v. *Clark,* 5 Mass. 355; 4 Am. Dec. 67; *Jackson* v. *Camp,* 1 Cow. 605; *Doe* v. *Thompson,* 5 Cow. 373; *Preston* v. *Bowmar,* 6 Wheat. 582; *Newsom* v. *Pryor,* 7 Wheat. 10; *Evans* v. *Corley,* 8 Rich. 315; *Wolfe* v. *Scarborough, supra; McIver* v. *Walker,* 9 Cranch, 173; 4 Wheat. 444; *Lunt* v. *Holland, supra; Davis* v. *Rainsford, supra; Magoun* v. *Lapham, supra; Rutherford* v. *Tracy,* 48 Mo. 325; 8 Am. Rep. 104; *Coats* v. *Mathews,* 2 Nott & McC. 99; *Sayers* v. *City of Lyons,* 10 Iowa, 254; *Large* v. *Penn,* 6 Serg. & R. 488; *O'Herrin* v. *Brooks,* 67 Miss. 266; *Nash* v. *Wilmington etc. R. R. Co.,* 67 N. C. 416.) Statement of quantity is the most uncertain part of a description, and courses or distances will be rejected when inconsistent with boundaries. (*Kruse* v. *Scripps,* 11 Ill. 103; *Powell* v. *Clark, supra; Jackson* v. *Barringer, supra; Jackson* v. *Moore, supra; Hathaway* v. *Power,* 6 Hill, 453; *Hess* v. *Cheney,* 83 Ala. 251; *Jackson* v. *Defendorf, supra; Emery* v. *Fowler,* 38 Me. 99; *Doe* v. *Porter,* 3 Ark. 18; 36 Am. Dec. 448; *Jackson* v. *Defendorf, supra; Mann* v. *Pearson, supra; Evans* v. *Corley, supra; Wolfe* v. *Scarborough, supra; Lunt* v. *Holland, supra; Roat* v. *Puff, supra.*) What is most material and most certain in a description must prevail over that which is less material and less certain. (*Vance* v. *Fore,* 24 Cal. 446; *Hathaway* v. *Power, supra; Doe* v. *Porter, supra; Jackson* v. *Moore, supra; Jennings* v. *Brizeadine,* 44 Mo. 332; *Jackson* v. *Wendell,* 5 Wend. 147; *Doe* v. *Thompson, supra; Newsom* v. *Pryor, supra.*) A map referred to in a deed is an essential part of the deed. (*Vance* v. *Fore, supra; McCall* v. *Davis,* 56 Pa. St. 434; 94 Am. Dec. 92; *Glover* v. *Shields,* 32 Barb. 379; *Davis* v. *Rainsford, supra; Kennebec*

*Purchase* v. *Tiffany,* 1 Greenl. (Me.) 219; 10 Am. Dec. 60; *Thomas* v. *Patten,* 13 Me. 329; *Lunt* v. *Holland, supra; Doe* v. *Cullum,* 4 Ala. 576.)    Where a river makes a lot fractional, the river is the boundary of the fractional lot.    (*Schurmeier* v. *St. Paul etc. R. R. Co.,* 10 Minn. 82; 88 Am. Dec. 56; *Railroad Co.* v. *Schurmeir,* 7 Wall. 275; *Menasha W. W. Co.* v. *Lawson,* 70 Wis. 600.)    If a man owns the bank or shore of a stream he owns to the thread of the stream.    (*Starr* v. *Child,* 20 Wend. 152.

*T. E. Gibbon,* for Respondent.

The grant is to be interpreted in favor of the grantor. (Civ. Code, sec. 1069.)    Under the surrounding circumstances the number of acres contained in the deeds is a material part of the description to show the intention of the parties.    (*Pico* v. *Coleman,* 47 Cal. 65; *Truett* v. *Adams,* 66 Cal. 218; *Hall* v. *Shotwell,* 66 Cal. 379.)

Garoutte, J.—This is an action in the nature of ejectment to recover the possession of a certain tract of land one hundred feet in width and nineteen hundred and thirty-six feet in length, situated within the boundary lines of the city of Los Angeles.    It is conceded that in the year 1868 the city of Los Angeles had the title to the realty, and plaintiff claims title as successor in interest of the grantees of the city.    The city conveyed certain lands to plaintiff's predecessors in interest, and he now claims that those deeds carried the city's title to the property involved in this litigation, and it is upon the construction of such deeds that the merits of the present case depend.

The first deed grants, conveys, and quitclaims unto Thomas Rowan that certain piece or parcel of land situated, lying, and being in the city and county of Los Angeles, and known on the official map of said city as fractional lot No. 6 (six), in block No. 57 (fifty-seven), of Hancock survey of said city, containing 7.25 (seven and twenty-five one hundredths) acres of land.    The second deed grants, conveys, and quitclaims unto Pru-

dent Beaudry that certain piece or parcel of land sit-
uate, lying, and being in the city and county of Los
Angeles, and known on the official map of said city as
lot No. 1 (one), in block No. 57 (fifty-seven), containing
24.77 (twenty-four and seventy-seven one hundredths)
acres.   That portion of the official map of the city of
Los Angeles relating to the lots in dispute may be fairly
illustrated by the following diagram:

This land lies upon the east side of the Los Angeles
river, and the river at high water is confined upon the
east side by a precipitous bank some hundred feet
in height.   The river here, in flood time, is wide
in extent and lessens as summer advances; and the
width of the river bed or bottom varies with the sea-
sons and the amount of rainfall.   At the date of the
city's deeds the official width of the river-bed had been
established, and by those lines the strip of land here
involved lay between the high bank or bluff and the
east line of the official bed.   In other words, this land
forms that part of the actual river bed or bottom lying

east of its official bed. Plaintiff now claims that the city, by these deeds, sold the land to the east line of the official bed. The defendant claims that it only sold the land to the high bluff or bank. The description contained in the deeds from the city is made by reference by block and number to the official map, but upon an inspection of that map it is not at all plain as to the exact boundary lines of the respective tracts conveyed.

What is to establish the shape and acreage of the tract of land described as "lot 1, block 57, as shown by the official map"? This interrogatory must be answered by a location of the western boundary line of that lot. From the face of the map we have the respective distances of three sides given, and possibly we would have the right to presume, in the absence of anything to the contrary, that the line making the fourth side was a straight line from one point to the other; but, be that as it may, we have the acreage of the tract given, and by calculation ascertain that a tract so located contains the exact number of acres credited to lot 1 upon the official map. This would seem to be conclusive as to the location of the west line of the tract. While a statement in a deed or upon a map as to the acreage of a certain tract of land is not at all conclusive or controlling as to the *quantum* of land in the tract; and while, as a matter of description, it must go down when coming in conflict with metes, bounds, and monuments, yet cases are presented where a statement of acreage renders most valuable aid in fixing boundary lines. If the description of tracts of land by monuments, distances, or otherwise is vague and indefinite by reason of conflicting lines, or by the omission of a line, or from any other cause, then a statement of the acreage sheds valuable light upon the issue, and often serves as the acting, moving cause for the conclusion reached. Such was the result in *Hicks* v. *Coleman*, 25 Cal. 142; 85 Am. Dec. 103; and in *Hall* v. *Shotwell*, 66 Cal. 381, it is said: "Now, it is well settled, where there is not a sufficient certainty and dem-

onstration of the land granted expressed in the other terms of its description, the number of acres is an essential part of the description."

In the present case we see nothing upon the face of the map to indicate that a portion of the river-bed is included in lot 1. Full lots under the Hancock survey, as shown upon the official map, are square in form, each side being 18.32 chains in length, and containing thirty-five acres; and it is conceded that this lot is a fractional lot, and does not extend across the river. Hence it becomes unnecessary to refer to the lines inadvertently shown upon the opposite side of the stream; but, the lot being fractional, plaintiff is absolutely bound by the distances given. His belongings go that far, and no farther. The testimony of the witnesses and the findings of the court declare that the north and south lines running west the distance called for upon the map terminate upon the bluff; they therefore necessarily fail to touch the river-bed, and the land here involved could only be brought within lot 1, as claimed, by making the western line of the tract a meandering line, and for this we see no authority whatever upon the face of the map. And, in addition thereto, such a construction would increase the acreage of the tract more than four acres, and thus directly contradict the statement of its acreage, as disclosed by the face of the map. All that we have said applies with equal force to fractional lot 6 of the same block. It appears to form a triangle, the length of two sides being given and the acreage. By calculation we find that a straight line upon the third side from point to point will inclose a tract of land filling the acreage demand. Such fact authorizes us to so declare the third boundary line.

Appellant contends that the river is a natural monument marking the west line of the tract, and, as such monument, overthrows the calls for distance found upon the north lines of the respective lots. There is some reason in this contention. Natural monuments are all controlling, and the river here, as a monument, if it was

plainly apparent from the map that it was so intended, would force other descriptions to give way. But it is not at all clear that such was the intention, for the line does not stop at the river; it crosses over, and goes away beyond. From the map it may as well be urged that the line dividing these respective tracts crosses the river, and stops at the west bank. Again, this line going west strikes a natural monument before it reaches the river, and it may, with much more plausibility be urged, that this monument marks the termination of the line; for, by reference to the scale upon which the map is made, it is apparent that it most nearly coincides with the distance calls of this line. This monument is plainly observable upon the face of the map; and, while it is not designated as a bank or bluff, that fact is immaterial, for that a natural monument of some character is there located cannot be questioned. Even if the map does not speak for itself as to the character of the monument, we still have the evidence of the surveyor as to what the marks there delineated upon the map represent, and there is no question whatever as to the fact. It is thus apparent that we are led into inextricable confusion when it is attempted to locate this land from the natural monuments appearing upon the map, and no resort is left us but to hold the distances given controlling; and, taking all the distances given in conjunction with the acreage of the respective tracts, we deem their identity sufficiently established. Especially are we confident of the soundness of this conclusion when we call to its support the principle of law that grants of land by public bodies, as such, to private parties are to be interpreted in favor of the grantor. (Civ. Code, sec. 1069.)

Owing to the conclusions reached, we do not deem it necessary to review the oral evidence offered at the trial. Neither do we discern any error of the court, in the admission or rejection of evidence, of sufficient importance to demand a retrial of the case.

For the foregoing reasons the judgment and order are affirmed.

HARRISON, J., and VAN FLEET, J., concurred.

Hearing in Bank denied.