R. R. CURRIER, Appellant, v. N. M. JONES, Warden, *et al.*, Appellees.

Injunction:   TRESPASS.   Where one enters upon land which is in
1   the peaceable possession of another and constructs a fence on
a disputed division line, he becomes a trespasser, and it is not
entitled to an injunction restraining the other from removing
the fence.

Division Fence:   RIGHT TO MAINTAIN:   FORM OF ACTION.   One who
2   has not first established his right to maintain a division fence
on land which is in the peaceable possession of another, can-
not, in an equitable proceeding asking simply for an injunc-
tion restraining interference with a fence so unlawfully con-
structed, have his right to maintain the same determined,
especially where he contends in argument on another branch
of the case that the question of his right to maintain the
fence is not an issue.

Boundaries:   DETERMINATION OF.   As a general rule known and
3   fixed monuments control courses, distances and areas, but
where there is uncertainty in the location of a monument and
in the distance, the stated area of the tract conveyed may be
referred to for the purpose of determining the intention of the
parties.

*Appeal from Keokuk Superior Court.*—HON. F. T. HUGHES, Judge.

FRIDAY, OCTOBER 9, 1903.

THE plaintiff alleges that he is the owner of a certain lot in the city of Ft. Madison, and that the state of Iowa owns and uses for penitentiary purposes certain land adjacent thereto, and that in November, 1899, he erected a fence on the boundary line between his land and that of the state, which was subsequently removed by the state, and that he was prevented from rebuilding the same. He asks that an injunction issue restraining the state or its officers from interfering with the erection of a fence on

such line, and from removing any fence which he may build thereon. The defendants answer, stating that the land whereon the plaintiff erected the fence in question is the property of the state, in fee, simple, and, that it has been in the possession of the state, under claim of title, for more than ten years. There was a trial, and a judgment for the defendant. The plaintiff appeals.—*Affirmed.*

*T. B. Snyder, W. E. Blake* and *Stutsman & Stutsman* for appellant.

*C. W. Mullan,* Attorney General; *James C. Davis* and *Hollingsworth & Blood* for appellees.

SHERWIN, J.—In 1851 there was deeded to the state for penitentiary purposes, lots 1115, 1116, and the south two hundred and two feet of lot 1117, in Ft. Madison, and in 1858 G. W. Elsroad and wife conveyed to the state a strip of land two hundred feet wide, by the following description: "Commencing on the east side of that street in Fort Madison known on the plat of said town as Oriental Street, at a point where said street is intersected by the south line of Fourth Street in the Town of Fort Madison, thence due east two hundred (200) feet, thence north and parallel with said Oriental Street nine hundred (900) feet, be the same more or less, to a point two hundred (200) feet east of said Oriental Street intersected by a line running due east from the northeast corner of lot eleven hundred and sixteen (1116) in Fort Madison, known as the northern parcel of ground in Fort Madison owned by the State of Iowa for penitentiary purposes, containing four acres and sixty-three hundredths (4 63-100) be the same more or less." The land now owned by the plaintiff was then owned by G. W. Elsroad and was afterwards platted by him as lot six; the plaintiff becoming the owner thereof shortly before this suit was brought, in 1899. The real controversy on the merits of the case is over the northern boundary of the tract conveyed by Elsroad and wife to the state in 1858.

For at least fifteen years before the plaintiff built the fence in question, a part of the land which he claims as belonging to lot six was inclosed and occupied by the state. It had fenced in a portion of it for cemetery purposes, and had erected a water reservoir which was partly thereon and within the fenced inclosure. At the time the

1. INJUNCTION: trespass.

plaintiff built the fence which was removed by the state, the state was in peaceable possession of all of the land which it had inclosed, and the plaintiff entered thereon without legal right or authority. He was in fact and in law a trespasser, and could acquire no legal or equitable right by his wrongful act. *Kimball v. Shoemaker*, 82 Iowa, 459. The substance of his prayer for relief is that he be not molested in his unlawful act, or, in other words, he asks a court of equity to sanction such act by its decree, instead of first establishing his right by proper proceedings, and then applying to a court of chancery for protection therein, if necessary. He chooses an unlawful course, and asks protection therein. That such protection should not be given is self-evident, and for this reason alone we think the bill was properly dismissed.

The plaintiff, in substance, claims, however, that having brought an action to try the title to, or right of possession of, the land in question, he should not be sent out of

2. DIVISION fence: right to maintain: form of action.

court without relief because of his mistake in proceeding; but this contention is not sound, because the plaintiff asks no relief except that an injunction be granted restraining the defendant from interfering with his unlawful acts, and in argument on another branch of the case, he asserts that no such questions are in the case and, such being true, he cannot claim that any question other than the right to injunction on the facts alleged was before the court, and the authorities relied upon by him are not, therefore, in point.

Moreover, on the merits of the case, we think the

plaintiff not entitled to maintain his action, for two reasons: The deed from Elsroad and wife to the state describes the land conveyed as commencing at the intersection of the south line of Fourth street with the east line of Oriental street; thence east two hundred feet; thence north nine hundred feet, more or less, to a point two hundred feet east of said street, intersected by a line running east from the northeast corner of lot 1116, * * * known as the northern parcel of ground in Ft. Madison owned by the state of Iowa for penitentiary purposes, containing four and sixty-three hundredths acres, more or less. While it is the general rule that known and fixed monuments control courses, distances, and area, it is also true that, where the monuments are not fixed and certain, they are no more controlling than other descriptions. The reason why they are given greater force when certain and definite is because of the elements making them so in fact. Here the monument, the northeast corner of lot 1116, is not definitely fixed as the point from which the line is to run east to intersect the north and south line two hundred feet east of Oriental street, because the deed further says that the point from which it is to be run is the northeast corner of the land known as the northern parcel of ground in Ft. Madison owned by the state for penitentiary purposes. The state acquired title to the south two hundred and two feet of lot 1117, it being directly north of lot 1116, at the same time that it acquired title to the latter lot; and there is nothing in the record tending to show that this fact was not as well known as that it held title to any of the lots, and it will be presumed that the true situation was known and understood. It is conceded by both sides that the distance of nine hundred feet named in the Elsroad deed was a mistake, under any view of the case, for, if the north end of the line is established at the intersection of a line due east from the northeast corner of lot

3. BOUNDARIES: determination of,

1116, as contended for by the plaintiff, the strip of land conveyed would be only eight hundred and eighteen feet long; and, if established at the point contended for by the state, it would be one thousand and twenty feet long. We then have uncertainty in the monument and in the distance, and, such being the case, we are to look to that which is the most certain for the purpose of determining the intention of the parties. *Hicks v. Coleman*, 25 Cal. 122 (85 Am. Dec. 103); *Hall v. Shotwell*, 66 Cal. 379 (5 Pac. Rep. 683); *McClintock v. Royers*, 11 Ill. 279; *Pierce v. Faunce*, 37 Me. 63; *Hoffman v. City of Port Huron*, 102 Mich. 417 (60 N. W. Rep. 831); *Gaveny v. Hinton*, 2 G. Greene, 344; 4 Ency. of Law (2d Ed.) 800. The deed conveys four and sixty-three one-hundredths acres, more or less, and the actual area claimed by the state is four and sixty-eight one-hundredths acres, while that conceded by the plaintiff is but three and seventy-four one hundredths acres. The quantity of land conveyed is as nearly certain as is usual. A variation of five one-hundredths of an acre is slight, and is covered by the terms of the deed. Furthermore, this amount just filled out the tract owned by the state. There are other circumstances tending to support this conclusion, which we will not specifically mention. On the whole record, we conclude that the deed was intended to and did convey to the state the land claimed by it. We do not discuss the claim of adverse possession though we think it well sustained by the evidence.

The judgment is AFFIRMED.