[Sac. No. 3837.  In Bank.—March 28, 1928.]

J. A. D. HUTTON et al., Respondents, v. YOLO ORCHARD
COMPANY (a Corporation) et al., Appellants.

Elmer W. Armfield and Arthur B. Eddy for Appellants.

G. P. Hurst, Hurst & Hurst, and E. B. Mering for Re-
spondents.

RICHARDS, J.—The plaintiffs commenced this action in
the year 1915 to quiet their title to certain lands and prem-

ises in the town of Cacheville, county of Yolo, state of California, lying in and along the bed of a stream known as Cache Creek and between the center or water line of said stream and the easterly bank thereof. The plaintiffs also and in a second count, joined by way of supplemental complaint, have set forth an action for damages against the defendants, alleging that the latter had without right removed certain sand and gravel from the lands in question to their damage in the sum of $25,000. The defendants in their answer to the plaintiffs' second amended complaint deny that the plaintiffs' predecessor was or that the plaintiffs or any of them are the owners of the premises in question, or are entitled to the possession thereof or any portion thereof; and deny that the claim of the defendants and each of them to said lands is without any right, but on the other hand allege that the defendants have an interest in the premises, which interest, however, the defendants' pleadings do not disclose. Answering the plaintiffs' complaint for damages, the defendants and each of them deny that they have wrongfully or otherwise entered upon said premises and taken therefrom large or any quantities of sand and gravel to the damage of the plaintiffs or any of them in any sum whatever; or that they are now continuing so to do. It is to be observed from the foregoing pleadings that the defendants rely upon the weakness of the plaintiffs' title and right of possession to the premises in question to defeat their recovery upon both causes of action, and that beyond the very general statement that they have an interest in said premises do not affirmatively set forth any paramount title or interest in themselves or any of them. The issue thus presented to the trial court for decision was as to whether the plaintiffs had shown a sufficiently strong chain of title or right of possession to defeat the defendants, treated as trespassers in possession, or to recover damages for such trespass. The trial court resolved this issue in favor of certain of the plaintiffs and rendered judgment in favor of such of them as it found to be the owners and entitled to the possession of the portion of the lands and premises to which these sought to have their title quieted, and also gave its judgment in favor of these for damages for the wrongful removal of certain quantities of sand and gravel therefrom by the defendants to the damage of said plaintiffs in the

sum of $4,000. From this judgment the defendants affected thereby have appealed and upon their appeal present the sole contention that the findings and judgment of the trial court as to said plaintiffs' title and possession to the premises to which they are given recovery are not sustained by the evidence, but are contrary thereto; and also that the findings and judgment of the trial court as to the damages for which the plaintiffs are given recovery are not supported by the evidence, but are contrary thereto.

We are thus brought to an inquiry as to the sources and strength or weakness of the title of the respondents herein to the portion of the premises for which they were awarded judgment, and as to the right of these to recover damages or the amount of damages which they were awarded by the trial court. The chain of title to said premises upon which the respondents herein rely had its origin in a deed dated February 4, 1857, wherein and whereby James M. Harbin et al., grantors, conveyed and confirmed unto James A. Hutton, grantee, a tract of land in the county of Yolo, containing about 316 acres, upon a portion of which the town site of Cacheville was thereafter to be located. By a deed bearing date the same day James A. Hutton purported to give a quitclaim deed to James M. Harbin of a half interest in forty acres of land included within said larger tract, whereupon and coincident therewith said Harbin executed to said Hutton a mortgage covering said forty acres of land to secure the payment of the sum of $857. In the deed from Hutton to Harbin and also in the latter's mortgage back, the east boundary line of the 40 acres thus conveyed and encumbered was described as "Thence south of east 18 degrees, one hundred rods to the middle of the bed of Cache Creek, thence down said creek east of north 18 degrees sixty rods," etc. It is upon the 40-acre tract involved in these two transactions that the town site of Cacheville was to be located, if in fact it had not already been located, since the conveyance to Harbin expressly reserved "any and all lots or parcels of land on which any building or buildings I now own may stand, the size and dimensions of which lots or parcels of land to be regulated and fixed by and in accordance with the map or plan of a town plat hereafter to be mutually made by said Hutton and myself in the laying off of a town upon said land and when so

laid off these lots by their number and description of block, street, etc., which shall have any such building or buildings on, are by this deed reserved and are not hereby conveyed.''

██ This quitclaim deed from Hutton to Harbin of an undivided one-half interest in this 40-acre tract of land has certain other peculiarities which have been much discussed upon this appeal. One of these consists in the fact that said deed, though purporting to have been signed by Hutton as the grantor thereof, was not acknowledged by him but was acknowledged by Harbin, the grantee thereof, and in such a state was recorded. Under the statute concerning conveyances as it read at the time this deed bears date (Compiled Laws of California (1850–1853), secs. 1–3, p. 513), the acknowledgment of a conveyance was a necessary part of the conveyance itself, in the absence of which it may well be questioned whether this instrument had any validity whatever. It is argued, however, by the appellants that the defect in this conveyance due to the failure of the grantor to acknowledge the same was cured by one or more of the curative statutes relating to instruments defectively acknowledged, and particularly by the provisions of section 1207 of the Civil Code relating to instruments defective as to their acknowledgment prior to a certain date. The district court of appeal devoted considerable space to the discussion of these conflicting contentions as to the validity of this quitclaim deed, but we do not deem it profitable to pursue the subject further than to state that we agree with the conclusion of that tribunal that whether or not Harbin got any title by that conveyance is quite immaterial, since there is no party to this action claiming under Harbin, who apparently passed out of the picture of this town site more than sixty years ago, during most of which time the plaintiffs' predecessor was in the exclusive possession of said town site, except as to those lots therein which he had conveyed to others. It is the terms and especially the descriptions of these later conveyances which are the chief concern upon this appeal.

██ The town site of Cacheville as it was laid out in the year 1857 lay along the westerly bank of Cache Creek, and a tier of lots in what appear from the map then made to be blocks 2 and 3 thereof ran back from First Street toward that stream. The bed of this creek between the bank and the center thereof lying back of these lots forms the subject

of controversy in this action, although the defendants herein do not claim to have succeeded to the title of any of these lot owners. On October 10, 1857, James A. Hutton and James M. Harbin granted and conveyed to one T. F. W. Price the whole of fractional block number 3 in said town of Cacheville, "being 300 feet on First street and running back on Sacramento and Clay streets *to the Bank of Cache Creek* containing five (5) lots of sixty (60) feet front each." On May 1, 1857, said Hutton and Harbin granted and conveyed to one Philo L. Dustin a lot designated on the official map or plat of said town of Cacheville as "the south half of lot number four (4) in fractional block number (2) lying 30 feet frontage on First street and running back 150 feet." On May 13, 1857, said Hutton conveyed to Hollenbeck and Noel a certain lot "Being in the town of Cacheville and known and designated on the official plat of said town of Cacheville as lot number five (5) in fractional block number two (2), lying sixty feet front on First street and running back one hundred and fifty feet." On September 4, 1857, said Hutton alone conveyed to Selig and Hyman "Lot number two (2) in block number two (2) as laid down and delineated on the plat of the town of Cacheville which lot contains sixty feet front on First street and back easterly *to the bank of Cache Creek,* and is bounded on the north by lot number three (3) of the same block, east *by Cache Creek,* south by lot number one (1) of the same block." In October 18, 1858, said Hutton conveyed to one Ferguson "Lot three (3), block two (2) of the town of Cacheville as laid down on the official map of said town, containing sixty feet front on First street and running back about 150 feet *to the bank of Cache Creek,* bounded north by Dustin, east by *the bank of Cache Creek,* south by Hyman and west by First street." On February 9, 1860, said Hutton conveyed to one William Campbell those certain premises "commencing at the southeast corner of the junction of Clay and First streets in the town of Cacheville, thence running southerly with the direction of said First street 300 feet; thence easterly to *the western bank* of Cache Creek; thence northerly *with the western* bank of said *Cache Creek* 300 feet to the south boundary line of Clay street; thence westerly to the place of beginning." On July 18, 1862, said Hutton conveyed to one Moran "Lot number one (1) in block number two (2) being sixty feet front on First street and running back one hun-

dred and fifty feet on Sacramento street as laid down on the official map of said town of Cacheville." On August 12, 1867, said Hutton conveyed to Charles S. White et al. those certain premises described as "Lot number two in said town of Cacheville; also a strip of land 39 feet 8 inches wide across the whole length of the north side of lot number one (1) in block number two (2) of said town." It is to be noted that these several conveyances refer directly or impliedly to the official map of the town of Cacheville. When that ancient map and the several unofficial tracings of which were offered in evidence are examined it will be seen that in all of these Cache Creek is delineated both as to its center and as to its banks and that upon the westerly bank of said creek the lots to which the foregoing conveyances relate are laid out and that as thus originally laid out they each ran not to the center but to the bank of said stream. It is also to be noted as a most significant coincidence that the descriptions of several of the lots thus conveyed relate and refer to each other in a way which leads to the almost irresistible conclusion that the grantor of these not only had the configuration of the official map itself in mind in their description, but that he also had in mind the idea that these lots were to run back uniformly; and thus the phrasing "to the bank of Cache Creek" is to be given application to each of said lots so conveyed and is also to be given its natural significance, viz., that the rear boundary of each and all of these lots was to be "the bank" and not "the center" of Cache Creek. This natural significance happens also to be the legal significance which the authorities assign to this phrase when found in conveyances. (4 Am. & Eng. Ency. of Law, 2d ed., p. 830, and cases cited; *Fulton* v. *New York,* 200 N. Y. 400 [37 L. R. A. (N. S.) 307, 94 N. E. 199]; 9 Corpus Juris, sec. 5.) The appellants, however, contend that they are entitled to the application of section 830 of the Civil Code and also of subdivision 4 of section 2077 of the Code of Civil Procedure to the descriptions contained in these several conveyances and which would extend the eastern boundary of each of the lots thus conveyed to the middle or thread of the stream. The difficulty in the way of the application of these code sections to the facts of this case lies in the fact that the grant in each instance herein shows, as we have seen, a different intent, viz., the intent that the boundary of these lots bordering on Cache Creek

should not be the stream by the *bank* of the stream, and that such express intent on the part of the grantor in each case furnishes a controlling monument which prevents the application of the foregoing provisions of the codes. (*Hostetter* v. *Los Angeles Terminal Ry. Co.*, 108 Cal. 38 [41 Pac. 330].) While there is considerable evidence in the record tending to show that the predecessor of the plaintiffs and respondents herein for many years prior to the institution of this action maintained possession of the premises here in dispute and exercised such acts of use and ownership therein and thereover as the nature and character of this portion of the gravel bed of Cache Creek reasonably afforded, the trial court made no special finding upon this subject and we do not, therefore, deem it necessary to discuss the sufficiency of such evidence to support such a finding if the same had been made.

Upon the question of damages the appellants herein contend that the findings of the trial court as to the amount of damages to which the respondents herein were entitled to judgment are entirely too general and amount to mere speculation for which the evidence in the case furnishes no adequate support. An examination of the record, however, discloses that the parties to the action and the trial court each went exhaustively into the matter as to how much gravel had been removed by the appellants from the portion of the bed of Cache Creek over which the plaintiffs have successfully asserted ownership and that the trial judge made a personal inspection of the situation during the trial of the cause. Under these conditions we are unable to hold that there was not sufficient evidence to uphold the findings and judgment of the court as to the amount of damages which these respondents have sustained and which amounted to only a modicum of the amount of damages which the plaintiffs in their supplemental complaint asserted as the result of the defendants' unlawful acts.

The judgment is, therefore, affirmed.

Shenk, J., Curtis, J., Langdon, J., Preston, J., Waste, C. J., and Seawell, J., concurred.

Rehearing denied.

All of the Justices present concurred.