On February 17th, 1742, the Proprietors of West Jersey made three several surveys to one Edmund Ilift for three *Page 153 
tracts of land in then Gloucester county, now Atlantic county; one called Lone Cedar Island, one called Older Island and one called Pork Island. In none of these surveys are there any metes and bounds, but the survey of Lone Cedar Island calls for sixty acres; that of Older Island thirty-three acres, and that of Pork Island seventeen acres.
During the year 1776 the Proprietors of West Jersey surveyed to one Frederick Steelman, by metes and bounds, a certain island called Beach Island. This survey called for two hundred and forty-four acres. All parties concede that the metes and bounds described in the said survey call for the island now known as Pork Island, and the issue before the court is: "Was the island now known as Pork Island, and described by the Proprietors in the survey of 1776 to Frederick Steelman as Beach Island, the same island called Pork Island in the survey to Edmund Ilift in 1742?"
To determine this question, the acreage of the first surveys must be considered.
Warner Risley, an engineer, testified that within the description of the Steelman grant there were two hundred and fifty-eight acres, although the call was for two hundred and forty-four acres. An examination of a map presented, showing the description of this survey superimposed upon the island now known as Pork Island, shows considerable acreage upon said island outside of the boundaries set out in said survey; that measurements and computations of a United States Geodectic Survey of 1841 show the island now known as Pork Island to consist of three hundred and twelve acres; that of Lone Cedar to consist of one hundred and thirty-four acres and that of Older Island to consist of sixty-five acres. None of the islands are named on the map. Likewise, that a New Jersey Geological Survey of 1880 shows Pork Island to consist of three hundred and twenty-four acres, but no computation was made of Lone Cedar Island or Older Island, although an island between Risley's Channel and Beach Thoroughfare consisted of twenty-five acres. The islands are not named on this map.
Risley also testified that he made a survey in 1926 and *Page 154 
at that time Pork Island was comprised of three hundred and thirty-eight acres.
The United States Geodectic Survey of 1886 named none of these islands, and no computation was presented of their acreage, as shown thereon. The United States Geodectic Survey of 1891 for the first time names Pork Island. It shows Lone Cedar Island as comprising what has been known as Lone Cedar Island and Older Island as one island by the name of Lone Cedar Island, and designates Elder Island as being on the north side of the thoroughfare, to the northward of Lone Cedar Island.
It will be noticed that the acreage of Lone Cedar Island and Elder Island is approximately twice the acreage called for in the surveys, while the acreage of Pork Island is more than eighteen and one-third times as much as in the survey set forth.
While a great difference between the acreage in surveys and that actually found upon the ground is not at all unusual, and has been attributed to several causes, one of which being a deliberate attempt on the part of the deputy general surveyor making the survey to allow a greater amount of land than that which was called for, still, that reason does not seem to apply in this case, as the surveys were all made upon the same day and by the same deputy general surveyor, and if he desired to falsely represent the amount of land, it cannot be understood why he would describe the islands with such manifest differences in the proportion of acreage. There were numerous other islands in the locality, some of which were much nearer to the acreage called for than is the present Pork Island.
Note under Heaton v. Hodges, 14 Me. 66, in30 Am. Dec. 731 (at p. 741):
"Where the other parts of the decription are not sufficiently certain and demonstrative, the quantity becomes essential in determining the identity of the premises, and may have a controlling influence. Field v. Columbet, 4 Saw. 523;McClintock v. Rogers, 11 Ill. 279; Pierce v. Faunce, 37 Me. 63; Kirkland v. Way, 3 Rich. (S.C.) 4; Welder v. Hunt, 34 Tex. 44." *Page 155 
The geography of these three islands now claimed is of considerable interest in considering the question. The three islands consist of a somewhat circular form, Pork Island being separated from Lone Cedar Island and Elder Island by a considerable thoroughfare, known as the Lone Cedar Thoroughfare, while Lone Cedar Island and Elder Island are only divided, if at all, by a small meadow waterway, between the large thoroughfare and Lone Cedar waters.
The Steelman survey, calling for Beach Island, which, by metes and bounds, without doubt covers what is now called Pork Island, causes the difficulty. At least in 1776 this island was known as Beach Island, and on September 17th, 1817, in a deed from James S. Steelman to Frederick Steelman, which recited the 1776 survey, it was then also called Beach Island. The first record of its being called Pork Island is in a deed from Benjamin Wilkins, sheriff, dated 1820, which, by virtue of execution against Frederick Steelman, just referred to, and sale thereunder, conveys an equal undivided one-half part of two hundred and forty-four acres called "Pork Island," to one Lewis M. Walker, and by another deed bearing said date, by which said sheriff conveyed to one Peter Steelman all of the real estate of Frederick Steelman in Gloucester county, after certain exceptions, one of which was one-half of the two hundred and forty-four acres called Pork Island, theretofore conveyed to Walker.
There can be little if any doubt but that this island has been known ever since about the time of said deeds as Pork Island. Men now aged, who have been familiar with the locality since childhood, knew this island as Pork Island, and testified that they had been so informed by their fathers or other aged men at the time of their childhood. One of the witnesses testified that his father had informed him that the name of said island was caused by reason of the fact that a vessel loaded with pork had been wrecked in the neighborhood and had been floated to this island (Pork Island) because of its high banks, and there unloaded. He was unable to testify whether this occurrence took place during his father's lifetime or prior thereto. Considering the ages of *Page 156 
these witnesses and the probability of the ages of their informants, it is manifest that there is no oral testimony fixing the name of this island as Pork Island prior to the early days of the last century.
The burden of proof is, of course, upon the complainants. It having been admitted by the parties hereto that the survey of Steelman in 1776 called for this island by metes and bounds by the name of Beach Island, and there being no testimony to show that the name of this island, which certainly was known by the Proprietors in 1776 as Beach Island, was the same island as that surveyed to Ilift in 1743 under the name of Pork Island, I am constrained to the opinion that the survey and grant to Steelman is the first survey and grant made by the Proprietors for the island known in 1776 as Beach Island, and in later years and at the present time as Pork Island.
It is unnecessary for my opinion to designate the chain of title of either party, as it was admitted that in so far as the complainants and defendants are concerned, the issue between them was and is as above stated.
A decree will be advised in favor of the complainants, such decree to follow the testimony as to the respective interests.